Argued and submitted November 3, affirmed December 17, 2003,
petition for review allowed April 27, 2004 (336 Or 657)
See later issue Oregon Reports

In the Matter of the Marriage of
Linda A. GROSSMAN,
*Respondent,*
*and*
Richard M. GROSSMAN,
*Appellant.*

9909-69143; A116358

82 P3d 1039

Leslie M. Roberts argued the cause for appellant. With her on the brief was Josselson, Potter & Roberts.

Barbara Gay Canaday argued the cause and filed the brief for respondent.

Before Landau, Presiding Judge, and Wollheim and Brewer, Judges.

BREWER, J.

## BREWER, J.

■     Husband appeals from the property distribution in the judgment dissolving the parties' marriage. He contends that the trial court erred in failing to enforce the property division provisions of a post-marital agreement that the parties entered into in contemplation of dissolution 11 years before their final separation. We affirm.

After cohabiting for approximately one year, the parties were married in 1981. Their marriage was dissolved in 2001. This was husband's first marriage and wife's second. The parties have no joint children, but wife has an adult child from her previous marriage. Both parties were 49 years old at the time of dissolution.

During the marriage, husband was employed in the computer field. Before the marriage, husband started a business—Pacific Dataware—that sold computer hardware and software. Pacific Dataware went through a Chapter 11 bankruptcy but emerged successfully, and the company was sold in 1997. Husband invested some of the proceeds from the sale of Pacific Dataware in real estate. He retained a minority interest in a spin-off company, 800 (aka 900) Support (the spin-off). After wife filed for dissolution, the spin-off was sold and husband's share of the proceeds was $2.1 million. Husband testified that, after he paid anticipated capital gains tax on the proceeds, the net proceeds would be reduced to $1.4 million.

Husband was the primary wage earner, although wife worked part time as a chiropractic assistant throughout the marriage. Husband's earnings substantially exceeded wife's. Wife also was a homemaker during the marriage. She stayed home with her daughter rather than working more hours and, for several years later in the marriage, she devoted significant amounts of time to the care of her mother.

The parties filed joint tax returns from 1981 through 1998. They commingled their money in a joint bank account, from which wife paid most of the household bills. In addition to depositing money in the joint account, husband also had a separate bank account. Wife used her own earnings as she pleased.

Over time, the parties had a fundamental disagreement. In June 1988, the disagreement was so serious that wife retained an attorney to advise her concerning a possible dissolution. Husband also consulted legal counsel, and husband's attorney prepared a post-nuptial property agreement (the agreement). After negotiations over a several-day period, the parties executed the agreement on June 21. Wife was represented by counsel, who reviewed the agreement before she signed it.

The agreement provides, in part:

> "5. The parties now contemplate that they will physically separate within the next week or so and that they may thereafter seek a dissolution of their marriage. In contemplation of a dissolution, the parties desire to make a complete and final settlement of all their property rights, support and maintenance of Wife, and claims of any kind and character between them. The parties have agreed upon the terms of this agreement in contemplation of the Court granting a decree of dissolution and the parties desire to reduce their agreement to writing."

Among other provisions, the agreement listed properties that were to be the separate property of each party, and it prescribed how property that the parties might jointly or separately acquire in the future would be treated. The agreement also provided that each party was to assume the debt associated with his or her separate property and agreed to save the other party harmless. Husband was to receive his business, three parcels of real property, and some personal property. At the time, husband's business was facing bankruptcy, and he had guaranteed indebtedness for it. Wife was to receive personal property and an additional $20,000 to be paid by husband as part of the property division over the next 24 months. Husband also agreed to pay for wife's health insurance over the next year. The agreement further provided that "[t]hese are to be husband's only obligations to wife by way of property settlement or spousal support in any dissolution or divorce decree. Wife expressly waives and gives up any claim or right to spousal support."

Neither party filed for dissolution of the marriage for another 11 years, and there was no evidence that either party instructed an attorney to prepare to do so.

Immediately after signing the agreement, wife left for a month to attend a family reunion. When she returned, wife resumed living with husband for three months. She then moved out again in November 1988. The parties lived apart for approximately one year. The parties then again resumed cohabitation and lived together, except for brief periods of separation, for the next ten years. For the two-year period after the agreement was signed, husband made the required payments to wife under it, whether or not the parties were living together, and wife accepted the payments.

Wife filed this action in September 1999. In her petition, wife sought an equitable division of the parties' property. The parties had acquired additional properties after they reconciled in the late 1980s, and the assets that they previously had owned also had increased in value. However, husband asserted that wife was entitled to no more property than was provided by the 1988 agreement. If husband were correct, he would receive more than $1 million worth of property, and wife would receive assets valued at less than $100,000.

The trial in this case was preceded by several legal skirmishes between the parties, the details of which are irrelevant to our disposition of the case. However, the trial court found that both parties testified untruthfully in several respects. The court therefore construed the 1988 agreement without relying on the testimony of either party concerning its meaning or the circumstances of its execution. The court determined that the agreement was fair when the parties entered into it but that it could not be fairly enforced in light of the parties' circumstances at the time of dissolution. The court held:

> "This agreement was intended to resolve the then existing property in contemplation of divorce. It was not intended to cover, and neither party was then intending to give up rights in the event of reconciliation, of living together for years, additionally, that is as husband and wife."

The court concluded that the after-acquired property provision included in the agreement was intended to protect certain property that husband might acquire after the agreement was executed but before the dissolution judgment was

entered. It also held that the agreement had become unconscionable and that the parties had rescinded it by reconciliation.

Husband appeals from the ensuing judgment, in which the trial court divided the parties' property without regard to the agreement. He asserts that the court erred in construing the 1988 agreement "to be conditioned on an imminent dissolution," in "disregarding the agreement upon finding that [its application] would result in a disproportionate distribution of the property as applied at the time of the 2001 dissolution," in determining that the agreement was unconscionable, in concluding that it was rescinded by the parties' reconciliation, and in failing to sever any unenforceable provisions, so as to give the agreement at least partial effect. Notably, husband does not assert that enforcement of the agreement would be *fair* or that the dissolution judgment fails to divide the parties' property in a manner that is "just and proper in all the circumstances." *See* ORS 107.105(1)(f).

We need not consider all of husband's arguments because we reject his major premise that, in failing to enforce the 1988 agreement because to do so would be unfair, the trial court followed misguided and outdated case law based on the notion that women suffer from legal disabilities that prevent their acts with respect to property rights from receiving equal dignity to that accorded the acts of men. According to husband, the problem begins with *Hill v. Hill*, 124 Or 364, 264 P 447 (1928). In that case, the Supreme Court held that a marital settlement agreement "is enforceable in equity only to the extent that it is just[.]" *Id.* at 377. In so concluding, the court cited older cases from other jurisdictions holding that agreements designed to facilitate divorce were cognizable only in equity because "at law, the parties being incapable of contracting, a court of law does not recognize their engagement as legal * * *." *Halstead v. Halstead*, 74 NJ Eq 596, 598, 70 A 928, 929 (1908). According to husband, that reasoning, long since committed to the scrap heap of history, discredits the rule stated in *Hill* itself. As husband sees it, unfairness is an insufficient bar to enforcement because agreements between spouses made in contemplation of dissolution must be enforced just as any other contract between fiduciaries.

The most obvious problem with husband's argument is that it flies in the face of a substantial body of case law that is much more recent than *Hill*. *See, e.g.*, *Webber v. Olsen*, 330 Or 189, 194, 998 P2d 666 (2000) (holding that a trial court is not required to incorporate into the judgment agreements that are unfair to one or the other of the parties); *Norris and Norris*, 302 Or 123, 126, 727 P2d 115 (1986) (stating rule that "the court is not bound by property settlement agreements between the parties"); *McDonnal and McDonnal*, 293 Or 772, 778, 652 P2d 1247 (1982) (holding that a dissolution court may, upon consideration, reject an agreement as unfair to one or the other of the parties); *Jensen v. Jensen*, 249 Or 423, 430-31, 438 P2d 1013 (1968) (holding that marital settlement agreements are enforceable when they are equitable given the circumstances of the case); *Crowley and Crowley*, 134 Or App 177, 181, 894 P2d 1174 (1995) (holding that "courts have the responsibility to distribute property between parties on dissolution in a manner that is just and equitable in the circumstances, which means that courts are not required to accept property settlement agreements submitted by the parties"); *Bach and Bach*, 27 Or App 411, 414, 555 P2d 1264 (1976) (same).

To his credit, husband acknowledges that his argument faces a considerable upstream swim against those and many other cases. He vigorously assays to distinguish some of those cases on the ground that they involve spousal support,[1] or that the courts' statements were *dicta*. What he fails to adequately come to grips with is that, regardless of the origins of the rule against enforcing unfair marital settlement agreements, it is supported by modern equitable principles and legislative mandate.

ORS 107.105(1)(f) authorizes a court to make a property division that is "just and proper in all the circumstances." In *Norris*, the Supreme Court explained:

"A property settlement agreement is offered by the parties as a suggested shorthand for the trial court's obligation to

---

[1] Husband asserts that spousal support involves more important societal interests than property division and, therefore, is worthy of immunity from his proposed rule that marital settlement agreements must be enforced just as any other contract between fiduciaries. We express no view with respect to that assertion.

achieve a distribution of property between the parties that is just and equitable in the circumstances. ORS 107.105(1)(f); *McDonnal*[, 302 Or at 778]. Application of that standard is ultimately the duty of the court, not of the parties."

*Norris*, 302 Or at 126; *see also Asbury and Asbury*, 129 Or App 96, 97, 877 P2d 1213 (1994) (holding that, "if there was a settlement agreement, it would not be binding on the trial court" and citing *Wrona and Wrona*, 66 Or App 690, 694, 674 P2d 1213 (1984), and ORS 107.105(1)(f)).

■   Husband nonetheless asserts that ORS 107.105(1)(f) does not furnish statutory authority "for the court to disregard the parties' property settlements." He points out that, under ORS 108.700 to 108.740, premarital agreements are enforceable according to their terms unless a specified defense, such as unconscionability, is proved. *See* ORS 108.725(1).[2] Husband discerns no difference between premarital agreements and dissolution settlement agreements executed after marriage that would justify the conclusion that courts may enforce the former, despite unfairness, but not the latter. Unlike husband, we do perceive salient distinctions.

First, ORS 108.725 provides a particular legislative framework for the enforcement of premarital agreements. Because it is the more specific statute, it controls in that context to the extent that it is inconsistent with ORS 107.105(1)(f). *See* ORS 174.020. By its terms, however, it does not apply to post-marital agreements. Second, premarital agreements are inherently more arm's length in nature than

---

[2] Husband does not rely on ORS 107.104, which provides, in part:

"(1)  It is the policy of this state:

"* * * * *

"(b)  * * * to enforce the terms of settlements * * *

"(2)  * * * set forth in a stipulated decree signed by the parties, a decree resulting from a settlement on the record or a decree incorporating a marital settlement agreement[.]"

ORS 107.104 was enacted by the 2001 Legislative Assembly and made effective to marital dissolution "degrees entered before, on or after the effective date of th[e act]," May 25, 2001. Or Laws 2001, ch 203, § 3. Because the agreement in this case is not among those settlements described in ORS 107.104, we do not find it necessary to apply that statute here.

are settlement agreements made after a marriage has commenced, even though it is breaking down. *See Bowers and Bowers*, 143 Or App 24, 27-28, 922 P2d 722 (1996) (stating that, "[w]hen parties contemplate dissolution of their marriage and enter into a property settlement agreement, each party is charged with the duty to look out for, and consider, the interests of the other," whereas, although "[p]arties contemplating marriage are also under a fiduciary duty * * * [i]t is the limited duty * * * fully to disclose one's assets"). It is unsurprising that courts—and the legislature—would be even more vigilant to ensure that agreements executed under such circumstances are just and proper, that is, *fair*, not merely invulnerable to garden variety contract defenses. Moreover, that vigilance is gender neutral; it is not founded on a nineteenth century social anachronism.[3]

Affirmed.

---

[3] We reject without discussion husband's argument that the trial court erred in failing to enforce the agreement partially.