Argued and submitted November 9, 2004, decision of Court of Appeals and judgment of circuit court affirmed February 17, reconsideration denied April 12, 2005

## In the Matter of the Marriage of

### Linda A. GROSSMAN,
*Respondent on Review,*

*and*

### Richard M. GROSSMAN,
*Petitioner on Review.*

## (CC 9909-69143; CA A116358; SC S51209)

106 P3d 618

Leslie M. Roberts, of Josselson, Potter & Roberts, Portland, argued the cause and filed the briefs for petitioner on review.

Barbara Gay Canaday, Lake Oswego, argued the cause and filed the brief for respondent on review.

BALMER, J.

**BALMER, J.**

This marital dissolution proceeding requires us to consider the continuing legal effect of a document that, at the time that it was drafted, was intended to be a marital settlement agreement. Husband and wife separated after seven years of marriage, considered dissolution of the marriage, and, in contemplation of that dissolution, entered into an agreement regarding the distribution of their property. They later reconciled and lived together for 10 years before seeking dissolution. In that later dissolution proceeding, husband sought to enforce the agreement that the parties had made, while wife argued that the trial court should divide the property, without enforcing the agreement, in a manner that was "just and proper" under ORS 107.105(1)(f). The trial court agreed with wife, as did the Court of Appeals. *Grossman and Grossman*, 191 Or App 294, 82 P3d 1039 (2003). Husband filed a petition for review, which we allowed. We limit our review to questions of law. ORS 19.415(4). For the reasons that follow, we agree with the Court of Appeals and the trial court and, therefore, affirm.

We take the facts from the Court of Appeals opinion and the record. The parties were married in 1981. They had no children together, although wife had a child from her previous marriage. Husband was the primary wage earner, and wife was the primary homemaker, as well as the caregiver for her daughter and, later, her elderly mother. Wife also worked part time as a chiropractic assistant. The parties filed joint tax returns from 1981 through 1998. The parties maintained a joint bank account, and husband also had a separate bank account.

Husband has a degree in computer science and worked as a software engineer. Before the marriage, husband had started a company, Pacific Dataware, that sold computer software and hardware. Pacific Dataware went through a Chapter 11 bankruptcy in the late 1980s but emerged successfully and was sold in 1997. Husband retained a minority interest in a spin-off company of Pacific Dataware, 800 Support (later named 900 Support). After wife filed for dissolution, 900 Support was sold, and husband's share of the proceeds was $2.1 million.

During their marriage, the parties disagreed about whether—and, if so, when—to have children. In 1988, the disagreement became so serious that wife consulted a lawyer to discuss possible dissolution of the marriage. Husband also consulted a lawyer, and his lawyer prepared an agreement regarding the division of the parties' property (the agreement). The parties discussed and negotiated the agreement over several days before they signed it. Wife's lawyer reviewed the agreement before she signed it.

The agreement was titled "Post-Nuptial Property Agreement," and it contained a detailed list distributing between the parties the real and personal property that they owned at the time. Husband was to receive his business, three parcels of real property, and certain designated personal property. Wife was to receive certain personal property and $20,000 to be paid by husband over the next 24 months. Husband also agreed to pay wife's health insurance for a year. The agreement provided that wife waived any claim to spousal support and that the payments specified in the agreement "are to be husband's only obligations to wife by way of property settlement or spousal support in any dissolution or divorce decree." The agreement also contained the following paragraph:

"5.  The parties now contemplate that they will physically separate within the next week or so and that they may thereafter seek a dissolution of their marriage. In contemplation of a dissolution, the parties desire to make a complete and final settlement of all their property rights, support and maintenance of Wife, and claims of any kind and character between them. The parties have agreed upon the terms of this agreement in contemplation of the Court granting a Decree of Dissolution and the parties desire to reduce their agreement to writing."

Immediately after the agreement was signed, wife left for a month to attend a family reunion. When she returned, she lived with husband for three months, and the parties then separated in November 1988 for approximately one year, during which wife took a three-month trip to India. During the two-year period after the agreement was signed, husband made the monthly payments identified in the agreement, whether or not the parties were living together, and

wife accepted them. Sometime after the parties resumed living together in 1989, they decided to have children. Wife underwent two *in vitro* fertilization procedures between 1997 and 1999. Those procedures were unsuccessful, and, as noted, the parties had no children together.

The parties acquired additional property after they began cohabiting again following the 1988-89 separation, and their other assets increased in value. In particular, as previously noted, husband's stock in 900 Support appreciated, and, while this action was pending, the company was sold, with husband's share of the proceeds exceeding $2 million. Wife filed this dissolution proceeding in September 1999. There is no evidence that either party filed for dissolution or instructed a lawyer to prepare a petition for dissolution in the more than 11 years between the time that the parties signed the agreement in June 1988 and the time that wife filed this action. In her dissolution petition, wife sought an equitable division of the parties' property. Husband responded that the 1988 agreement was binding and that wife was not entitled to any property distribution other than as provided in that agreement. As the Court of Appeals stated, "If husband were correct, [husband] would receive more than $1 million worth of property, and wife would receive assets valued at less than $100,000." *Grossman*, 191 Or App at 298.[1]

The trial court rejected husband's argument that the agreement should be enforced. The court construed the agreement as a "marital settlement agreement" intended to divide property in an imminent dissolution proceeding, rather than as a "post-nuptial property agreement" entered into by parties not intending to divorce but for the purpose of avoiding disputes in the event of a possible later dissolution. The court found that the agreement was fair at the time that the parties signed it but that it should not be enforced in the

---

[1] The trial court stated that, if the agreement were enforced, husband would "end up with over 3 million dollars and [wife would] end up with $38,000[.]" It is unclear whether the trial court, in making that comment, failed to take into account the capital gains tax that husband would have had to pay on the proceeds of the stock sale or what other assets he was including in those totals. No one disputes, however, that, if the agreement were enforced, the value of husband's share of the property would be at least 10 times the value of wife's share.

dissolution proceeding before the court, which occurred after the parties had reconciled and more than 10 years after the agreement had been signed. The court stated:

> "This agreement was intended to resolve the then-existing property in contemplation of divorce. It was not intended to cover, and neither party was then intending to give up rights in the event of reconciliation, of living together for years, additionally, * * * as husband and wife."

The trial court further concluded that, although the agreement had been valid when the parties executed it, the parties' "subsequent reconciliation [was] a repudiation that's inconsistent [with] * * * the basic premises [of the] agreement, and constitutes a rescission of the agreement." The trial court instead entered a judgment dividing the property in a manner that the court determined to be just and proper under the circumstances, as ORS 107.105(1)(f) permits.

Husband appealed, arguing, *inter alia*, that the trial court erred in declining to enforce the agreement. He asserted that, because the agreement was fair when executed and was not the result of inequitable conduct, it should be enforced like any other contract. Husband claimed that, as a matter of law, the property division in the agreement was "just and proper" for purposes of ORS 107.105(1)(f) and, therefore, that the trial court was required to enforce it.[2] The Court of Appeals rejected husband's arguments, holding that ORS 107.105(1)(f) and cases interpreting that statute authorize a court to make a property division that is "just and proper in all the circumstances," even if that division requires the court to decline to enforce an agreement such as the one at issue here. *Grossman*, 191 Or App at 299-302.

On review, husband similarly argues that an agreement for the distribution of marital property on dissolution is enforceable on the same basis as any other contract. He again asserts that the trial court was obligated to enforce the terms

---

[2] Husband, however, did not offer any other argument that the property division that the trial court made, and that was included in the dissolution judgment, *failed* to divide the property in a manner that was "just and proper in all circumstances." *Grossman*, 191 Or App at 299.

of the agreement, because, as the trial court found, the agreement was fair at the time that the parties executed it and neither party engaged in inequitable conduct in the negotiation or execution of the agreement, and also because the parties partially had performed the agreement. Husband acknowledges that statutes and case law play an important role in the distribution of marital property in a dissolution, but he advances several reasons why Oregon law requires a court to enforce the marital settlement agreement at issue here. We consider those reasons in turn.

Husband first argues that this court must reconsider and overrule its decision in *Hill v. Hill,* 124 Or 364, 264 P 447 (1928), which held that a marital settlement agreement "is enforceable in equity only to the extent that it is just." 124 Or at 377. Husband argues that the three cases that *Hill* cited in support of that proposition were based on the outdated notion that a married woman lacks the legal capacity to enter into a contract with her husband, a rule that already had been abrogated in Oregon by statute at the time that this court decided *Hill.*

■       We see no reason to reconsider *Hill.* The cases cited in *Hill* to which husband refers may have been based on legal principles or attitudes regarding women that no longer are correct or appropriate, if they ever were; however, the analysis and holding in *Hill* are not subject to the same objection.[3] The result in *Hill* had nothing to do with whether a married woman had the legal capacity to contract with her husband. Rather, it was based on the court's view that the marital settlement agreement in that case should not be enforced because it gave one party (wife, who was supporting the parties' three unmarried daughters, a widowed daughter, two grandchildren, and a niece) an unfairly small portion of the marital property. *Hill,* 124 Or at 377-78. Moreover, this court

_____

[3] Husband's position is similar to arguing that the United States Supreme Court's decision in *Muller v. Oregon,* 208 US 412, 28 S Ct 324, 52 L Ed 551 (1908), upholding a statute setting maximum working hours for women, should be overruled because the Court's rationale for upholding the statute was based, in part, on discredited views regarding the roles and abilities of women. As with this court's decision in *Hill,* the legal analysis (the scope of the state's authority to set maximum hours legislation) and the result (sustaining the state law against constitutional challenge) in *Muller* undoubtedly remain correct notwithstanding the Court's quaint (or even offensive) discussion of gender roles.

has not cited *Hill* in more than 40 years and, as the Court of Appeals recognized, instead has upheld the rule against enforcing unfair marital settlement agreements on the basis of "modern equitable principles and legislative mandate." *Grossman*, 191 Or App at 300. *See, e.g., Norris and Norris*, 302 Or 123, 126, 727 P2d 115 (1986) (stating rule that "the court is not bound by property settlement agreements between the parties"). Finally, as the Court of Appeals also pointed out, the rule that marital settlement agreements are unenforceable in a dissolution proceeding if they are unfair is "gender neutral," *Grossman*, 191 Or App at 302, and Oregon courts have relied on that rule to prevent a wife, as well as a husband, from enforcing such an agreement. *See, e.g., Bach and Bach*, 27 Or App 411, 555 P2d 1264 (1976) (refusing wife's request to enforce property settlement because doing so would be inequitable).

■ Husband next argues that the statute that applies to marital dissolution judgments, ORS 107.105, does not prevent the enforcement of the agreement. He asserts that, as a matter of law, a marital settlement agreement is "just and proper" for purposes of that statute unless it was obtained by duress or in breach of one party's fiduciary duty to the other. Wife responds that ORS 107.105(1)(f) requires the trial court to make a property division in a dissolution proceeding that is just and proper in all the circumstances.

ORS 107.105 provides, in part:

"(1)   Whenever the court renders a judgment of marital annulment, dissolution or separation, the court may provide in the judgment:

"* * * * *

"(f)   For the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances."

Wife does not rebut persuasively husband's argument that an agreement that was fair at the time it was entered into necessarily is "just and proper" for purposes of ORS 107.105(1)(f). Her position would allow the trial court to rely upon that statute and ignore arm's-length agreements

between parties merely because the trial court determined that some other distribution of property was "just and proper." To allow the trial court to exercise such broad discretion despite an otherwise valid marital settlement agreement between two parties in a dissolution proceeding would be inconsistent with this court's cases that encourage settlement of such proceedings, *see, e.g., McDonnal and McDonnal*, 293 Or 772, 779, 652 P2d 1247 (1982) ("[t]he parties' own resolution of their dispute should be accorded great weight"), and with the legislature's stated policy of "encourag[ing] the settlement of suits for marital annulment, dissolution or separation," ORS 107.104(1)(a).[4] Rather, because in many cases a range of possible property divisions likely would be just and proper, a trial court ordinarily should accept a marital settlement agreement that provides for a division of property within that range.

Husband, for his part, does not come to grips fully with wife's argument that ORS 107.105(1)(f) authorizes a court to reject an agreement, if enforcement of the agreement would be inequitable, and instead to make a just and proper distribution based on the court's assessment of all the circumstances. This court, while emphasizing the critical importance of settlement agreements, repeatedly has recognized the authority of the trial court in a dissolution proceeding to make a just and proper distribution of marital property. *See, e.g., Norris*, 302 Or at 126 ("Application [of the just and proper standard in ORS 107.105(1)(f)] is ultimately the duty of the court, not of the parties.").

This case, however, does not require us to accept either of the parties' competing interpretations of the relevant statutes and case law. That is because, as we discuss below, the parties did not intend the agreement here to apply

---

[4] The legislature enacted ORS 107.104 in 2001 to overturn this court's decision in *Webber v. Olsen*, 330 Or 189, 998 P2d 666 (2000), in which this court declined to enforce as a contract an agreement embodied in a stipulated judgment of dissolution. As we already have described, ORS 107.104(1)(a) announced a state policy of encouraging settlement of dissolution and similar cases. ORS 107.104(1)(b) and (2) specifically direct courts to enforce the terms of judgments, including stipulated judgments signed by the parties and judgments incorporating marital settlement agreements. Neither party relies on ORS 107.104, presumably because the agreement here never was incorporated into a judgment and therefore does not fall within the terms of ORS 107.104(2).

to *this* dissolution. Rather, the parties intended the agreement to apply to a dissolution that they contemplated at the time that they executed the agreement in 1988, a dissolution that never occurred. Accordingly, even if husband were correct that a property agreement made in contemplation of dissolution is just and proper under ORS 107.105(1)(f) and should be the basis for the dissolution judgment, his argument fails here because the agreement at issue was not made in contemplation of the parties' 1999 dissolution.

As noted previously, in this case we review the trial court's decision for errors of law, and we therefore accept the trial court's findings of fact regarding the agreement. The trial court heard testimony from both parties and from the lawyers who were involved in the drafting and execution of the agreement, and the court considered the terms of the agreement in detail. The trial court found that the agreement was made in "contemplation of an imminent, if not immediate" divorce. The trial court further stated that the agreement "was intended to resolve the then-existing property in contemplation of divorce." On the other hand, the trial court found that the agreement "was not intended to cover, and neither party was then intending to give up rights in the event of reconciliation, of living together for years, additionally, * * * as husband and wife." For that reason, the trial court determined that the agreement was not enforceable under the circumstances.

Based on the trial court's findings, we conclude that the parties intended the agreement to divide their marital property for purposes of dissolution within a short period of time after the agreement was signed in 1988. The parties did not dissolve their marriage within that time. The parties did not intend the agreement to divide their marital property for purposes of the dissolution that wife sought in 1999. The agreement is evidence of the parties' intentions regarding the division of property had they dissolved the marriage in 1988, but it does not demonstrate their intentions regarding property division in 1999.[5]

---

[5] We emphasize again that the trial court found that the parties did not intend for the agreement to control the division of property in the event that they lived together as husband and wife for some period of years and later divorced under different circumstances. If the agreement in this case had been what the trial court

Finally, husband argues that ORS 107.105 cannot be read to permit the court to disregard a fairly negotiated settlement on the ground that it results in a disproportionate division of property without undermining the validity of *pre*nuptial agreements. Husband asserts that "[t]here is no principled basis to distinguish between pre- and post-marital agreements under ORS 107.105(1)(f)."

The short answer to husband's argument is that ORS 108.700 to 108.740, the Uniform Premarital Agreement Act, provides that *pre*marital agreements that meet the statutory requirements are enforceable, while the legislature has adopted no similar statute regarding agreements made between persons who already are married.[6] The Uniform Premarital Agreement Act requires the courts to enforce such an agreement in certain circumstances, and, as the more specific statute regarding property settlement in a marital dissolution proceeding, it controls to the extent that it is inconsistent with the general "just and proper" distribution requirement of ORS 107.105(1)(f). ORS 174.020(2) (specific statute controls general statute when two conflict). Husband does not challenge the validity of the premarital agreement statute, and we consider the legislature's adoption of that statute to be a complete response to husband's assertion that there is no principled basis to distinguish between a premarital agreement and a marital settlement agreement.

Husband identifies a number of policy reasons that would support the enforcement of any agreement entered into during marriage to the same extent that premarital agreements are enforced. However, given the legislature's choice to establish a statutory framework respecting premarital agreements, while also leaving the "just and proper" standard in place for property division in a marital dissolution, we cannot agree with husband that marital settlement agreements have the same status under Oregon law as premarital agreements.

---

called a "post-nuptial property agreement"—that is, an agreement *not* entered into in contemplation of an imminent divorce—then our analysis would be different.

[6] As noted previously, 338 Or at 107 n 4, the legislature in 2001 enacted ORS 107.104, regarding the enforcement of settlements and particularly settlements incorporated in judgments in dissolution cases. Neither party asserts that ORS 107.104(2) covers the agreement at issue here.

With the foregoing understanding of the trial court's findings of fact and the parties' legal arguments regarding marital settlement agreements and the effect of ORS 107.105(1)(f), we return to husband's claims. Each of husband's assignments of error turned on a different aspect of his assertion that the trial court committed error in not enforcing the agreement. Because we conclude that the parties did not intend the agreement to apply to this dissolution proceeding, the trial court did not err in declining to enforce the agreement, and each assignment of error therefore fails.[7] As previously noted, except for his legal arguments that the trial court was required to enforce the agreement, husband did not argue, either in the Court of Appeals or in this court, that the trial court's division of the property was not "just and proper" within the meaning of ORS 107.105(1)(f). Accordingly, having rejected husband's legal arguments, we agree with the Court of Appeals that the trial court did not err in its division of the property.

The decision of the Court of Appeals and the judgment of the circuit court are affirmed.

---

[7] Four of husband's assignments of error assert that the trial court erred in not enforcing the agreement. The fifth assignment of error asserts that the trial court erred in failing to enforce the agreement partially. The Court of Appeals rejected husband's fifth assignment of error without discussion, 191 Or App at 302 n 3, and husband did not discuss that assignment in this court.