Argued and submitted April 16, 2009, supplemental judgment on remand modified to award wife additional $143,668.13; attorney fee judgments vacated and remanded for reconsideration; otherwise affirmed April 14, appellant's petition for reconsideration filed April 23 and respondent's response to appellant's petition for reconsideration filed April 30 allowed by opinion June 16, 2010 See 235 Or App 641, 234 P3d 133 (2010)

In the Matter of the Marriage of

John Michael PROCTOR,
*Petitioner-Respondent,*

*and*

Joyce Ann Smith PROCTOR,
nka Joyce A. Smith,
*Respondent-Appellant.*

Lane County Circuit Court
150223725; A136448

229 P3d 635

723-a

Mark Johnson argued the cause for appellant. With him on the opening brief was Johnson Renshaw & Lechman-Su PC. With him on the reply brief was Johnson & Lechman-Su PC.

Eric C. Larson argued the cause for respondent. With him on the brief were Robin J. Wright and Gevurtz, Menashe, Larson & Howe, P.C.

Before Wollheim, Presiding Judge, and Brewer, Chief Judge, and Sercombe, Judge.

SERCOMBE, J.

## SERCOMBE, J.

Wife appeals three supplemental judgments that the circuit court entered on remand from this court. *Proctor and Proctor*, 203 Or App 499, 125 P3d 801 (2005), *modified on recons*, 204 Or App 250, 129 P3d 186, *rev den*, 340 Or 672 (2006) (*Proctor I*). One of the supplemental judgments modified the division of the parties' marital property. The other two supplemental judgments denied wife's requests for attorney fees. Wife contends that the court erred in (1) failing to divide the marital assets consistently with Oregon law, (2) not allowing prejudgment interest on the money judgment, and (3) failing to award her attorney fees in both the original and remand proceedings. We review the denials of attorney fees and costs for abuse of discretion, *Wells v. Santos*, 211 Or App 413, 155 P3d 887, *rev den*, 343 Or 160 (2007), and wife's remaining assignments of error *de novo*, ORS 19.415(3).[1] We modify the supplemental judgment dividing the marital assets, vacate and remand the supplemental judgments denying attorney fees, and otherwise affirm.

The facts are explained in *Proctor I*:

"The parties were married in California in 1991. They came into the marriage with separate assets, and had a premarital agreement describing the treatment of those assets. The premarital agreement included a 'choice-of-laws' provision: 'This agreement is made and entered into between the parties in California and shall be interpreted as construed in accordance with the laws of the State of California.'

"The trial court entered a dissolution judgment in November 2003. It divided the marital property as proposed by husband. The trial court explained that the award of property to husband included 'reimbursement' to husband for his contributions to the acquisition of marital assets, in the amount of $453,845.63. Reimbursements are a component of property divisions under California dissolution law. * * *

"* * * * *

---

[1] The notice of appeal in this case was filed before the effective date of the amendments to ORS 19.415 in Oregon Laws 2009, chapter 231.

"The trial court apparently concluded that the parties' premarital agreement, specifically, the choice-of-laws provision, required that the parties' marital assets be divided pursuant to California law."

203 Or App at 502-03.

The premarital agreement attached schedules listing the "separate" property of each party, pledging that "such property shall remain [the] separate property" of that party. Each party further agreed that "any community efforts of either party contributed to or directed toward separate property assets of either spouse shall not create a community interest in the separate property assets" and that "sales of any separate property of either spouse and the proceeds of any such sales remain entirely separate property even though uncompensated community efforts have been contributed to the separate property." Husband's listed property included his residence at Del Mar, California, and his business interests in Polar Pacific, Inc. Wife's separate property included a residence and an airplane.

In the original dissolution judgment, the court awarded four pieces of real property to husband, free and clear of any interest in wife, except for $77,572.87 to be paid to wife for her interest in one of the properties. The trial court also awarded to husband the personal property and banking accounts in his possession or held in his name and to wife her personal property. However, the court "did not specifically identify which properties it considered to be marital assets, which properties it awarded to husband as his own separate assets and which properties it considered to be part of the reimbursement to husband for his contribution to the acquisition of marital assets." *Id.* at 505. The only explanation the trial court gave was its adoption of "facts and analysis set forth in husband's trial memorandum" and husband's suggested division of property. *Id.*

Wife appealed from that judgment, and we concluded that the trial court had improperly applied California substantive law such as "reimbursements," as opposed to Oregon substantive law, to the parties' property division. *Id.* at 503-04. We explained that the "choice-of-laws provision in the parties' premarital agreement is just that: an agreement

that California law will govern the *construction* of the agreement." *Id.* at 504 (emphasis in original). We instructed that, "[o]n remand, the trial court should reconsider the property division under Oregon law * * *." *Id.* at 511.

In the first appeal, wife also argued that the trial court had erred in awarding husband, as his own separate property, particular assets that she asserted were marital assets: (1) $100,000 received by husband as repayment of a "loan" made to a third party; (2) a Starduster bi-plane; (3) a 1994 Cadillac automobile; (4) the proceeds of the sale of a 2000 Ford truck; and (5) a contract receivable interest on property at Kimmel Lane. *Id.* at 504-05. We observed that "[i]t is undisputed that the assets were acquired during the marriage. Accordingly, there is a presumption that the parties contributed equally to their acquisition." *Id.* at 505. Because husband had "not overcome the presumption of equal contribution with respect to each of the assets," we directed that, "on remand, the trial court should treat the five assets as assets to which the parties contributed equally to their acquisition." *Id.* at 506.

On remand, wife argued that the trial court must "refashion" the property division under Oregon law, relying on a presumption of equal contribution to the acquisition of marital property under ORS 107.105(1)(f). It was her position that husband had not rebutted the presumption of equal contribution to additional marital assets beyond those divided in *Proctor I*, and, therefore, those marital assets should be divided equally. Husband responded that the trial court was required only to make an equitable distribution of the five specific assets identified in *Proctor I*. He requested that the court apply *Kunze and Kunze*, 337 Or 122, 92 P3d 100 (2004), to determine the proper distribution of the remaining marital property at issue. Specifically, husband contended that wife's proposed property division on remand failed to take into consideration that the premarital agreement specified that significant assets were husband's separate property.

The trial court determined that the remaining assets at issue were marital property. Thus, it considered "whether equal division of [those assets] would be a just and proper division." Although the trial court did not reopen the record

for new testimony, it did allow the parties to submit written statements on the issue of "whether an equal division is just and proper." The supplemental judgment on remand awarded wife one half the value of the assets at issue in *Proctor I*, or $121,901.50, with interest to accrue at nine percent from the date of the judgment on remand. The judgment also provided that, pursuant to the premarital agreement and Oregon law, most of the remainder of the property would, as before, be awarded to husband, including the property previously awarded to husband as "reimbursements" as that term is used under California law. The trial court awarded wife $77,572.87 for her share of the equity in the residential property on Rivershore Drive in Roseburg.

Shortly after the supplemental judgment on remand was entered, wife petitioned for payment of her attorney fees, costs, and expenses, submitting separate statements for fees and costs arising from the initial dissolution proceeding and from the remand proceeding. The petitions were denied by two separate supplemental judgments.

On appeal, wife argues that the trial court abused its discretion when it refused to award attorney fees and costs for the initial proceeding and the proceeding on remand. Wife also asserts that the trial court erred in not awarding prejudgment interest on the value of the property newly awarded to wife as a result of the *Proctor I* decision. Finally, wife contends that the trial court neglected to apply Oregon law on remand as instructed by this court, but instead divided the property in the manner that a California court would, giving greater effect to the premarital agreement than would be the case under Oregon law. Specifically, wife assigns error to the trial court's award to husband, as his "sole and separate property," the same assets that it had erroneously designated as "reimbursements" under California law in the original dissolution judgment.[2] As we

---

[2] Wife asserts that the trial court "simply recharacterized the 'reimbursement' assets as husband's separate property and awarded them to him again." In her view, she is entitled to an equitable share of the marital assets that were erroneously awarded to husband as separate property. Wife identifies several of those as marital assets and argues that she should receive one half their value, including (1) equity appreciation in a property in Del Mar, California; (2) proceeds from the sale of a Piper Super Cub airplane; (3) a 1929 Ford Model A pickup and horse trailer; (4) several motorcycles; and (5) insurance proceeds from a 1990 GMC truck.

understand it, wife contends that Oregon law would not necessarily continue to treat proceeds of the disposition of husband's separate assets listed in the premarital agreement as husband's assets and that the trial court erred in giving the premarital agreement that presumptive effect. We address that assignment of error first.

## I. PROPERTY DIVISION

There are two statutes particularly relevant to wife's property division claims—ORS 107.105(1)(f), stating the policies used to divide martial property in a dissolution judgment, and ORS 108.700 to 108.740, the Uniform Premarital Agreement Act, which describe the legal effect of a premarital agreement.

■ ■ ORS 107.105(1)(f) states, in part, that a court may provide in a marital dissolution judgment

"[f]or the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances. * * * There is a rebuttable presumption that both spouses have contributed equally to the acquisition of property during the marriage, whether such property is jointly or separately held."

According to *Kunze*, the first step in the application of ORS 107.105(1)(f) is to determine whether or not the property is a marital asset. 337 Or at 134. Marital *property* is the entire class of property subject to the dispositional authority of the court in a marital dissolution case. *Massee and Massee*, 328 Or 195, 206, 970 P2d 1203 (1999). Marital *assets* are a subset of marital property; they include *only* the property that either or both parties acquired during marriage. *Id.* at 201 n 2. In *Massee*, the Supreme Court held that, "[b]ecause the appreciation, during the marriage, of [a spouse's] separately held assets is property, and because the acquisition of that property occurred during the marriage, we hold that any

---

Wife contends that those assets were acquired during the marriage, transferred to wife during the marriage, or, in the case of the Del Mar property, appreciated during the marriage. The Del Mar property was also held separately and jointly and was subject to jointly managed financial transactions over many years. Wife calculates that her one-half share of those assets is $990,810.50.

such appreciation is a marital *asset*. ORS 107.105(1)(f)." 328 Or at 206 (emphasis added).

Second, a court applies and determines the effect of the rebuttable presumption of equal contribution to those marital assets. As explained in *Kunze*,

"[i]f a party establishes that the property at issue is a marital asset, however, then the court must apply the rebuttable presumption of equal contribution under ORS 107.105(1)(f) as its next step in the analysis. * * * [T]he presumption directs the court that, unless proven otherwise, the court must find that both parties have contributed equally to the acquisition of marital assets. When the statutory presumption is not rebutted, this court has determined that, absent other considerations, the 'just and proper' division of the marital assets is an equal division between the parties."

337 Or at 134 (citations omitted). By contrast, when the presumption of equal contribution *has* been rebutted, a court divides the property as is just and proper; "[w]hen a party has proved that a marital asset was acquired free of *any* contributions from the other spouse, however, this court has determined that, absent other considerations, it is 'just and proper' to award that marital asset separately to the party who has overcome the statutory presumption." *Id.* at 135 (citing *Pierson and Pierson*, 294 Or 117, 123, 653 P2d 1258 (1982)).

The court in *Kunze* also noted that appreciation of separate property during the marriage is a marital asset and reiterated that " 'efforts expended after acquisition are relevant to division of the value of improvements or appreciation, but do not affect the preceding acquisition.' " 337 Or at 145 (quoting *Jenks and Jenks*, 294 Or 236, 241 n 2, 656 P2d 286 (1982)). In other words, the presumption of equal contribution may apply to any increase in value during the marriage of a particular asset, without changing the classification of the premarital equity in that property as separate property.

After a preliminary division of marital assets based on the parties' contributions, a court must then assess whether the resulting division of the *entire* marital property is "just and proper." As described in *Kunze*,

"[a]fter the court makes its preliminary determination of the appropriate division of the marital assets by applying the statutory presumption, ORS 107.105(1)(f) next requires that the court consider what division of all the marital property—that is, both the marital assets *and any other property that the parties had brought into the marriage*—is 'just and proper in all the circumstances.'"

337 Or at 135 (emphasis added).

The issue in this case is how the application of ORS 107.105(1)(f) to the parties is affected by their premarital agreement and the Uniform Premarital Agreement Act. Under that act, a premarital agreement that is in writing and signed by the parties is "enforceable without consideration." ORS 108.705. Under ORS 108.710(1),

"Parties to a premarital agreement may contract with respect to

"(a)    The rights and obligations of each of the parties in any of the property of either or both of them whenever and wherever acquired or located;

"* * * * *

"(c)    The disposition of property upon * * * marital dissolution[.]"

ORS 108.725(1) provides that a premarital agreement is unenforceable in certain circumstances; impliedly, a premarital agreement is enforceable absent those circumstances.[3]

The few cases applying ORS 107.105(1)(f) that mention premarital agreements do not involve an enforceable agreement. In *Lind and Lind*, 207 Or App 56, 139 P3d 1032 (2006), for example, the husband presented a premarital agreement to the wife before the marriage, but the wife refused to sign. When dividing the appreciation of the husband's separate property, the court reasoned:

"[A]lthough it is true that husband presented wife with a prenuptial agreement that would have prevented considering the home to be a marital asset, the fact is that wife

___

[3] Those circumstances include involuntary execution of the agreement by a party, and unconscionability together with lack of knowledge of the assets of the other party. ORS 108.725(1).

rejected that agreement and husband married her anyway, thereby creating the inference that he understood her to consider the home to be part of the marital estate.

"Considering all these circumstances, we conclude that, although husband successfully rebutted the presumption of equal contribution, it is just and equitable to divide equally husband's investment in the Corvallis residence."

*Id.* at 68. By contrast, in *Francis and Francis*, 212 Or App 310, 157 P3d 1202 (2007), the parties had signed a premarital agreement establishing that each retained separate ownership of their property, but once they married, the husband transferred title to his separate property to the wife, and they revoked the premarital agreement entirely. In that case, the court explained that, although the premarital agreement established the husband's *original* intent to keep particular property as his separate property, his "transfer of title to joint ownership soon afterwards, in an apparent effort to alleviate wife's financial insecurity, supports an inference that his intention had changed and he intended to give wife an equal interest." *Id.* at 315-16 (footnote omitted).

The Oregon Supreme Court, in *dictum*, stated in a case involving a marital settlement agreement:

"ORS 108.700 to 108.740, the Uniform Premarital Agreement Act, provides that *pre*marital agreements that meet the statutory requirements are enforceable, while the legislature has adopted no similar statute regarding agreements made between persons who already are married. The Uniform Premarital Agreement Act requires the courts to enforce such an agreement in certain circumstances, and, as the more specific statute regarding property settlement in a marital dissolution proceeding, *it controls to the extent that it is inconsistent with the general 'just and proper' distribution requirement of ORS 107.105(1)(f)."*

*Grossman and Grossman,* 338 Or 99, 109, 106 P3d 618 (2005) (emphasis added; footnote omitted).

No party contends that the premarital agreement in this case is not enforceable under ORS 108.725(1). We readily conclude that the premarital agreement controls the classification of which property was premarital separate property

and binds the court and the parties to the distribution of marital property according to its terms. The parties do not raise, and we do not decide whether the allocation of property under a premarital agreement affects the division of the remaining marital property that is not subject to that agreement under the ORS 107.105(1)(f) "just and proper" standard.

The meaning of the premarital agreement in this case is straightforward. The parties intended to allow husband and wife to keep the respective listed properties as "separate property" under California law, together with the proceeds of the sale of any of the properties, even if "community efforts" contributed to those proceeds. Under California law, the "separate property" of a married person includes property owned by that person as well as its "rents, issues, and profits."[4] Thus, the parties intended through the premarital agreement to have the court allocate to each of them on dissolution of the marriage their respective listed property, its appreciation and income, and the proceeds from any sale of that property.

Notwithstanding the agreement between the parties, wife contends that certain assets listed as husband's separate property under the agreement should be treated as marital assets under Oregon law and divided; she also asserts that several other assets should be divided equally. The assets in question are a group of motorcycles, a 1929 truck and hand-built trailer, the proceeds from the sale of an airplane, two GMC trucks, two properties in Roseburg, and the appreciation in value of the Del Mar property in California. Husband argues that the division of those properties ordered

---

[4] California law, at the time of the premarital agreement, provided:

"(a) Separate property of a married person includes all of the following:

"(1) All property owned by the person before marriage.

"(2) All property acquired by the person after marriage by gift, bequest, devise, or descent.

"(3) The rents, issues, and profits of the property described in this section.

"(b) A married person may, without the consent of the person's spouse, convey the person's separate property."

Former Cal Code §§ 5107, 5108 (1991), renumbered as Cal Fam Code § 770.

by the trial court is "just and proper" under ORS 105.105(1)(f).[5]

■    Wife first contends that several motorcycles are marital assets that should be divided. Although acquired during the marriage, the motorcycles were acquired through husband's business, Proctor Properties and Investments. The parties agreed in the premarital agreement that "any assets related to that business shall remain the separate property of the party owning or acquiring the same." Given that agreement, we conclude that the motorcycles are husband's separate property under the premarital agreement. The trial court did not err in awarding the motorcycles to husband as his separate property.

■    Wife next argues that a group of assets—the proceeds from the sale of a Piper Super Cub airplane, a 1929 Ford Model A truck, a horse trailer, a GMC water truck, and the insurance proceeds from 1990 GMC pickup truck—were acquired during the marriage and are marital assets to which the presumption of equal contribution applies. The record indicates that husband acquired the GMC water truck and GMC pickup truck in 1990 before the parties married. Neither property is a marital asset, no presumption of equal contribution applies, and we see no reason to disturb the trial court's award of both to husband.

Husband purchased the 1929 Ford truck while the parties were separated. Because it was purchased during the marriage, it is a marital asset to which the presumption of equal contribution applies. However, husband purchased the truck on his own, with his separate funds, and wife did not contribute to its acquisition. Therefore, the presumption of equal contribution has been rebutted, and the trial court did not err in awarding the truck to husband. Similarly, husband constructed the horse trailer with no contribution from wife

---

[5] The trial court did not explain how it classified the various properties. It stated in the original dissolution judgment that it accepted husband's analysis and facts, but adjudged a reimbursement figure of $453,845 that did not match husband's requested reimbursements, and was not consistent with husband's requested property division. It continued that allocation in the judgment under review.

and has successfully rebutted the presumption as to the trailer. *See Kunze,* 337 Or at 134.

The Super Cub airplane was acquired and sold during the marriage, and the parties do not argue that the presumption of equal contribution has been rebutted. *Id.* Therefore, wife is entitled to $16,000, which is one-half of the value of the airplane at the time of dissolution.

■ The disputed property includes two residential real properties on Rivershore Drive and North Bank Road in Roseburg that were not listed in the premarital agreement. The Rivershore Drive property was acquired during the marriage and is therefore a marital asset. The trial court allocated that property to husband and awarded wife $77,572.87 for her share in the home's equity, taking into account husband's separate contributions toward the purchase price of the property. Again, the issue is whether evidence of husband's separate contributions rebutted the presumption of equal contribution. Husband argued at trial that he separately contributed $255,695 of the property's value of $410,482. Wife contended that the presumption of equal contribution was not rebutted by husband's evidence. A portion of husband's contribution toward the purchase price of the Rivershore Drive property was from funds obtained by husband and wife from a refinancing of the Del Mar property. In light of wife's participation in that refinancing, we are not persuaded that husband's evidence rebuts the presumption of equal contribution. Therefore, we conclude that it is just and proper to modify the judgment to award one-half of the value of the Rivershore Drive property, $205,241, to wife, an amount that is $127,668.13 greater than the $77,572.87 awarded by the trial court.

The North Bank Road property is also a marital asset that was acquired during the marriage and was not listed in the premarital agreement. That property was acquired with proceeds of the sale of husband's separate property listed in the premarital agreement, without contribution from wife. Thus, the premarital agreement controls its disposition, and we do not disturb the trial court's award of that property to husband.

■       What remains is the Del Mar property. The Del Mar property belonged to husband before the parties married in 1991 and was listed as his separate property in the premarital agreement. Wife does not dispute that the value of the equity in that property at the time of the marriage is husband's separate property under the premarital agreement. Wife asserts, and husband does not dispute, that the property increased in value by $1,900,000 during the marriage. Wife urges us to divide the equity appreciation on the Del Mar property, arguing that the appreciation is a marital asset under *Massee*, distinct from the *pre*marital equity in that property. Husband counters that the property and its appreciation constitute one asset that is separate property under the premarital agreement and should be divided only as is just and proper because it is not a marital asset.

■       We conclude that the equity value of the Del Mar property at the time of the marriage is not a marital asset subject to the presumption of equal contribution under ORS 107.105(1)(f). However, the appreciation in value of the Del Mar property is a marital asset under *Massee*. But, because the appreciation in value was husband's separate property under the premarital agreement, the agreement dictates the award of that property to husband on dissolution of the marriage.

■       The remaining issue is whether ORS 107.105(1)(f) requires a different overall allocation of the marital property, the "real or personal property, or both, of either or both of the parties," in order to reach a just and proper division considering "all of the circumstances." Wife contends that the gross disparity in the allocated shares of the marital property, and the commingling of husband's interest in the appreciated value of the Del Mar property, compels a different allocation under the just and proper standard. To the extent that that overall allocation results from implementation of the premarital agreement, that division may be just and proper as a matter of law, as suggested by the *dictum* in *Grossman*. Even if the court had discretion to order a different division, wife has not established that it would be just and proper to do so.

■       Wife claims that awarding husband the entire interest in the Del Mar property would be inequitable because the

parties' assets were commingled in sharing the proceeds of refinancings of that property and in paying down the loans secured by the property. She implies that that inequity affects the overall division of the marital property. *Kunze* recognizes that commingling of separate properties of the parties may justify a different property division under the just and proper standard. Under *Kunze*, a court must "focus[ ] upon whether a spouse demonstrated an intent to retain that spouse's separately acquired asset as separate property or whether, instead, that spouse intended for that property to become the joint property of the marital estate." 337 Or App at 142. Not all acts of commingling require inclusion of a separately acquired asset in the property division. Instead, a court evaluates the "extent to which a spouse has integrated a separately acquired asset into the joint finances of the marital partnership" and "whether any inequity would result from the award of that asset to that spouse as separate property." *Id.* A court must also consider whether a " 'spouse's treatment of the separately acquired asset demonstrated an intent for that asset to become a joint asset of the marital partnership.' " *Lind*, 207 Or App at 67 (quoting *Kunze*, 337 Or at 141). The application of those principles does not require a reallocation of the appreciated value in the Del Mar property under the just and proper standard. That is, any commingling of the parties' assets in the refinancing of the Del Mar property requires no re-sorting of the martial property in general, or the Del Mar property in particular.

The parties transferred the Del Mar property between themselves several times in order to facilitate using the equity in the property to purchase and restore a seaplane (the "Albatross project") and for other purposes. In 1992, husband transferred title to the property to wife by quitclaim deed in order to facilitate obtaining a loan; the parties obtained a deed of trust for $250,000 on the property and invested that money in two marital enterprises: the Albatross project and a property in Roseburg, Oregon. Husband testified that wife was added to the title at the insistence of the bank and as a condition of the loan; husband could not have obtained the loan without wife. In 1993, wife deeded the property back to husband, and husband obtained an equity line of credit for $150,000, which was also used for

the parties' joint enterprises. In 1995, husband executed an "interspousal transfer deed" to put wife back on the title to the property, again as a condition for securing another loan, this time for $400,000 for the Albatross project. In 1997, wife deeded the property back to husband, and husband executed another deed of trust for $250,000. Those funds were used for the parties' Rivershore Drive property and living expenses. In 2000, the parties signed another grant deed to husband alone. Wife testified that she paid approximately $98,000 of the loans on the Del Mar property from her own separate funds.

Husband argues that those transfers do not weigh in favor of dividing the appreciation on the property but instead corroborate the parties' desire to implement the premarital agreement. Husband contends that wife's relinquishments of title to the property to husband after obtaining each loan is evidence that the parties continued to abide by the premarital agreement's classification of the Del Mar property as husband's separate property. Wife counters that, given the extent to which the property was commingled with the joint finances and the extent to which the parties became jointly indebted on the property, an inequity would result if the appreciation were awarded to husband as his sole and separate property.

We agree with husband. The premarital agreement provides that the property should remain husband's separate property regardless of community efforts; the parties' conduct throughout the marriage was consistent with that intent. We do not find that it was commingled with other marital property to such an extent that a just and proper division would result in an award of the Del Mar property to husband with an offsetting allocation of other property to wife.

■■ ■■ Nor is the overall allocation of the marital property inequitable. An equitable division of property is not always an *equal* one. *Fuernsteiner-Perin and Perin,* 211 Or App 23, 153 P3d 151 (2006). Where, as here, the parties entered the marriage with a great disparity in wealth and have a valid premarital agreement allocating the bulk of their assets, an

unequal division satisfies our obligation under ORS 107.105 to effect a division that is just and proper.

Therefore, with the exception of a share of the Rivershore Drive property and the $16,000 in proceeds from the sale of the Super Cub airplane, we conclude that the property division in the supplemental judgment on remand implements the premarital agreement and is otherwise just and proper in light of all the circumstances. Thus, the judgment entered on remand should be modified to award an additional $143,668.13 to wife but is otherwise correct.

## II.  ATTORNEYS FEES, COSTS, AND EXPENSES

Wife contends that the trial court abused its discretion by not awarding her attorney fees, costs, and expenses from the original dissolution proceeding and, in a separate assignment of error, that the trial court erred by not awarding her attorney fees, costs, and expenses arising from the remand proceeding. Because we have substantially modified the property division, we vacate the trial court's judgment regarding attorney fees and remand the issues of attorney fees to the trial court for reconsideration. *See Proctor I*, 204 Or App at 252. On remand, the trial court shall make findings of fact and conclusions of law as requested by the parties under ORCP 68 C(4)(e).

## III.  PREJUDGMENT INTEREST

Wife assigns error to the court's failure to award her prejudgment interest on the revised property division made on remand. We review *de novo*. ORS 107.405. Wife relies on *Shook v. Vonder Haar*, 134 Or App 170, 894 P2d 1178 (1995), for the proposition that when a judgment is reversed, the parties should be returned to the position they were in before the erroneous judgment was entered. Husband argues that wife's reliance on *Shook* is misplaced, and we agree.

*Shook* involved the reversal of an erroneous foreclosure of a land sale contract; the purchaser was required to fulfill the obligation under the contract for the period during which the erroneous judgment had been in effect, including payment of interest pursuant to the contract's terms. The revival of the land sale contract justified an award of prejudgment interest for the period during which it had not been in

effect in order to restore the *status quo ante*. In contrast, this case involves no revival of a contract between the parties. Instead, it is an equitable proceeding where the second judgment corrects an earlier judgment on property division. It is speculative whether any delay in transferring assets or part of their past value advantaged husband or wife. We are not aware of any necessary requirement that a party in an equity case must be returned to the position he or she occupied before an erroneous judgment was made. The trial court's denial of prejudgment interest is affirmed.

## IV.  CONCLUSION

The supplemental judgment on remand is modified to include an additional award to wife to reflect her contributions to the acquisition of marital assets. Because we substantially modify the property division, we vacate and remand the trial court's judgment on attorney fees for reconsideration. Finally, we affirm the trial court's decision not to award prejudgment interest to wife.

Supplemental judgment on remand modified to award wife additional $143,668.13; attorney fee judgments vacated and remanded for reconsideration; otherwise affirmed.