Argued May 25; affirmed July 6, 1938

# NORTHWESTERN ICE & COLD STORAGE CO. *v.* E. HENRY WEMME ENDOWMENT FUND ET AL.

(80 P. (2d) 881)

Department 1.

*Robert L. Sabin, Jr.*, of Portland, for I. H. Van Winkle.

*Malarkey, Sabin & Herbing*, of Portland (Samuel H. Martin of Portland, on the brief), for appellants.

*Omar C. Spencer*, in pro. per.

*Maurice W. Seitz*, of Portland (Frank S. Sever, of Portland, on the brief), for respondent James R. Bain.

KELLY, J. This is a suit wherein a declaratory judgment or decree is sought. Certain provisions of the last will and testament of the late E. Henry Wemme, deceased, are involved and also a purported option set forth in two certain leases executed by the trustees of trust property set apart by said decedent in said last will and testament for purposes therein specified, as lessors, and plaintiff, Northwestern Ice & Cold Storage Company, a corporation, as lessee. The case is presented upon an agreed statement of facts.

The pertinent facts are as follows:

Said E. Henry Wemme died in Portland, Oregon, on December 17, 1914, leaving a last will and testament which was duly admitted to probate in Multnomah county, Oregon, wherein said testator devised in trust certain real property, located in Portland, Oregon, to three trustees therein named with instructions that said trustees form a corporation under the laws of the state of Oregon to take over said property and administer said trust. That thereafter and pursuant to the

terms of said will the E. Henry Wemme Endowment Fund was duly incorporated and prior to the execution of the first lease in suit said real property, including the tract in suit herein, was by proper conveyance conveyed to said Endowment Corporation which at the time of the execution of the first lease in suit was and ever since has been the owner thereof.

"That after the Endowment Corporation became the owner of said property as aforesaid, there arose certain litigation over the trust clauses in said will, as a result of which the matter came before the Supreme Court of the State of Oregon in the case of Wemme v. First Church of Christ Scientists, reported in 110 Oregon, page 179, and thereafter pursuant to decree order and direction of said court the Circuit Court of Oregon for Multnomah County, appointed five trustees to manage and direct the carrying out of the terms of said will relating to said trust as interpreted by said Supreme Court and to act as directors of said Endowment Corporation. That Irene H. Gerlinger, Omar C. Spencer, Edgar H. Sensenich, E. B. McNaughton and O. C. Bortzmeyer are the present duly appointed and acting trustees of said trust and likewise directors of said Endowment Corporation.

That on the 29th day of January, 1926, the said Endowment Corporation, acting by and through the then duly appointed trustees, of whom the said present trustees are successors in trust, leased a part of said trust property, to-wit: All of the South 120 feet of block 72, East Portland, Multnomah County, Oregon, to the plaintiff herein for a term of ten years, beginning on the first day of December 1926, and ending on the last day of November, 1936. That in consideration of the obligation assumed by the plaintiff under said lease the Endowment Corporation granted to the plaintiff the exclusive right, privilege and option to purchase said premises at any time within five years after the first day of December, 1926, for the purchase price of fifty thousand ($50,000.00) dollars, the plaintiff to

receive credit on said purchase price for certain rentals theretofore paid under said lease.

That at the time said lease and option was given as aforesaid said property was improved by a four story, concrete and mill constructed building, approximately 200 by 60 feet in dimension. That said building had formerly been used by said testator as a wool warehouse but had been vacant and unproductive for a number of years. That said building was not suitable or readily adaptable to ordinary commercial purposes and was for that reason unprofitable to the trust estate. That the value of said building and property at the time said lease was executed was not to exceed $50,000, the amount of the purchase price set forth in said lease. That said lease was a distinct benefit and enhanced the value of said trust estate and was so deemed and considered by said trustees and said Endowment Corporation.

That at the time said lease was executed it was contemplated between the parties that the plaintiff would at its own cost and expense remodel and improve said building and adapt the same for the purposes of a cold storage plant and warehouse and that thereafter the plaintiff relying upon said lease and the option to purchase said property thereunder expended in the permanent improvement and reconstruction of said building approximately $100,000.

That the plaintiff performed the obligations of said lease within the time therein stated and notified the Endowment Corporation and said then trustees that it desired to purchase said property in accordance with said option and was ready, able and willing to pay the purchase price as therein provided, upon receiving proper conveyances of said property, free and clear of encumbrances as of the time said lease was executed.

That the Endowment Corporation and said trustees were at said time willing and anxious, but unable to convey said property due to litigation then pending and desired to defer the transfer of said property until such time as said corporation and said trustees

were in a position to convey said property by good and sufficient deed of conveyance as provided in said lease.

That in the latter part of the year 1929 the Endowment Corporation and the then trustees expressed their willingness to carry out the terms of the option contained in said lease and to execute conveyances of said property to the plaintiff as therein provided, but at said time plaintiff was advised of the doubtful right of the Endowment Corporation and the trustees to sell and convey said property and requested the then trustees to take such steps as might be necessary to definitely establish that right. That at that time said then trustees were not agreeable to taking such action, believing that they possessed the necessary right to convey. That thereupon as a temporary expedient and pending further deliberation as to the proper course to pursue in order to carry out the agreement and intention of the parties with reference to the transfer of said property a new lease was executed by and between Endowment Corporation, acting by and through its then trustees, and the plaintiff, wherein and whereby said Endowment Corporation leased said property to the plaintiff for a term of fifty (50) years. That said second lease was executed for the purpose and was intended to be an extension of said former lease and to preserve the rights of the plaintiff in and to said property as existed under and by virtue of said former lease, and that said second lease was executed between the parties with that intention and upon that understanding and agreement. * * *

That by the terms of said latter lease and for the purpose of preserving the rights and privileges of the plaintiff and to accord with the original understanding and agreement between the plaintiff, said trustees and said Endowment Corporation said lease gave to the plaintiff the exclusive right and privilege at any time thereafter and while the plaintiff was not in default thereunder to purchase said property for the consideration therein set forth. That the plaintiff has in all things kept and performed said lease on its part to be kept and performed and has heretofore notified the

Endowment Corporation and said trustees and the defendant trustees that it desires to exercise said option of purchase and has offered to pay to the Endowment Corporation and said defendant trustees the purchase price provided for in said lease upon receiving adequate and proper conveyances conveying a fee simple title in said property to the plaintiff; that the said Endowment Corporation and the said defendant trustees are now willing and desirous to execute a conveyance thereof as originally agreed upon between the plaintiff and said Endowment Corporation and said former trustees.''

That the option attempted to be given in said second lease is as follows:

''IT IS FURTHER AGREED between the Lessor and the Lessee that as a part of this lease, and in consideration of the obligations assumed by the Lessee hereunder, the Lessor hereby gives and grants unto the Lessee the exclusive right, privilege and option to purchase said premises at any time during said demised term; PROVIDED that the Lessee has performed the terms and conditions of this lease up to the time of the exercising of said option, upon the following terms and conditions, viz:

1. At any time within the first one hundred fifty-eight (158) months of said demised term for the sum of Forty-four thousand three hundred thirty-six and 85/100 ($44,336.85) dollars, the Lessee to receive credit upon said sum of Two Hundred eighty and 60/100 ($280.60) dollars per month from the date hereof to the time of the exercising of said option, not exceeding one hundred and fifty-eight months, said purchase price or balance thereof to be paid in cash upon the execution by the Lessor of the necessary muniments of title.

2. At any time after the first one hundred fifty-eight months of said term for the sum of Ten Dollars ($10).''

The term of said second lease began on October 1, 1929, and continued for fifty years thereafter. For the first one hundred and fifty-eight months of said term plaintiff agreed to pay a monthly rental of $406.60 payable each month in advance, and after the expiration of the first one hundred and fifty-eight months of said term plaintiff agreed to pay ten dollars each year in advance on the first day of October.

Adhering to the construction of said last will and testament given by this court with reference to the question whether the E. Henry Wemme Endowment Fund or the trustees thereof were given the power to sell the real estate constituting the corpus of said trust, we are constrained to hold that no such power was thereby conferred: *Wemme v. First Church of Christ, Scientist,* 110 Or. 179, 196 (219 P. 618).

The admitted facts, however, plainly disclose that the transaction under consideration was entered into and conducted under a mutual mistake on the part of both said lessors and said lessee, wherein both believed that the power to sell had been conferred upon said trustees.

■ It is true that this was a mistake of law and the general rule is that equity will not relieve against a mistake of law.

■ This general rule has its well recognized exceptions. In fact, in 1823, Chief Justice Marshall said:

"Although we do not find the naked principle, that relief may be granted on account of ignorance of law, asserted in the books, we find no case in which it has been decided that a plain and acknowledged mistake in law is beyond the reach of equity." *Hunt v. Rousmanier's Administrators,* 8 Wheat. 174 (5 L. Ed. 589).

In 1911, Mr. Justice Sheldon of the Massachusetts Supreme Judicial Court rendered an able and instructive opinion upon this subject wherein many authorities are cited and epitomized. In this opinion, the matter is so clearly and convincingly stated that we venture to quote at length therefrom:

"These defendants also contend that the mistake set forth in the bill was a pure mistake of law, for which no redress can be given. It is a general doctrine that, as it is the duty of every one to conform his conduct to the requirements of the law, so all men must be treated alike in courts of civil and of criminal jurisdiction, as being aware of the duties and obligations which are imposed upon them by the law, and that ordinarily one cannot successfully ask for affirmative relief or defend himself against an otherwise well-founded claim, on the bare ground that he was either ignorant of the law or mistaken as to what it prescribed." Citing authorities.

"But it is now well settled that this rule is not invariably to be applied. In some cases where great injustice would be done by its enforcement, this has been avoided by declaring that a mistake as to the title to property or as to the existence of certain particular rights, though caused by an erroneous idea as to the legal effect of a deed or as to the duties or obligations created by an agreement, was really a mistake of fact and not strictly one of law, and so did not constitute an insuperable bar to relief." Citing authorities.

"In other cases, a distinction between ignorance or mistake as to a general rule of law prescribing conduct and establishing rights and duties, and one as to the private right or interests of a party under a written instrument, has been laid down; and it has been declared that, while relief could not be given by reason of a mistake of the former kind, one of the latter kind shared by both parties to an agreement and resulting in a loss of the rights of one of them, may be set aside at the suit of the injured party, though no fraud was practiced upon him. The distinction taken is between the

general law of the country, for ignorance of which no one is excused, and private rights which depend upon the existence of particular facts and the rules which the law declares as to those facts.'' Citing authorities.

''In other cases, sometimes as the ground of decision and sometimes merely in discussion or argument, it has been said that there is no established rule forbidding the giving of relief to one injured by reason of a mistake of law, but that whenever it is clearly shown that parties in their dealings with each other have acted under a common mistake of law and the party injured thereby can be relieved without doing injustice to others, equity will afford him redress. Freichnecht v. Meyer, 39 N. J. Eq. 551; Lawrence County Bank v. Arndt, 69 Ark. 406, 65 S. W. 1052; Ryder v. Ryder, 19 R. I. 188, 32 Atl. 919; Hausbrandt v. Hofler, 117 Ia. 103, 90 N. W. 494, 94 Am. St. Rep. 289, quoting and following Stafford v. Fetters, 55 Ia. 484, 8 N. W. 322, and Ring v. Ashworth, 3 Ia. 452; Snell v. Atlantic F. & M. Ins. Co., 98 U. S. 85, 25 U. S. (L. Ed.) 52. To the same effect see Swedesboro Loan Etc. Assoc. v. Gans, 65 N. J. Eq. 132, 55 Atl. 82; in which the old rule as to ignorance of the law is said to be subject to so many exceptions that it is quite as often inapplicable as applicable; Williams v. Hamilton, 104 Ia. 423, 73 N. W. 1029, 65 Am. St. Rep. 475, in which the court declares it to be well settled that a mistake as to law may, under certain circumstances, afford ground for relief in equity; and Allcard v. Walker, (1896) 2 Ch. Eng. 369, 381, in which the proposition that relief never can be given in respect to a mistake of law was called inaccurate. So it has been said that the important question was not whether the mistake was one of law or of fact, but whether the particular mistake was such as a court of equity will correct, and this depends upon whether the case falls within the fundamental principle of equity that no one shall be allowed to enrich himself unjustly at the expense of another by reason of an innocent mistake of law or of fact entertained by both parties. Park v. Blodgett, etc. Co. 64 Conn. 28, 29 Atl. 133; Blakemore v. Blakemore, 44 S. W. 96, 19 Ky. L. Rep. 1619, 1620;

Dinwiddie v. Self, 145 Ill. 290, 305, 33 N. E. 892; Benson v. Bunting, 127 Cal. 532, 59 P. 991, 78 Am. St. Rep. 81; Order of United Commercial Travelers of America v. McAdam, 125 Fed. 358, 368, 61 C. C. A. 22; Stone v. Godfrey, 5 De G. M. & G. (Eng.) 76, 90; Naylor v. Winch, 1 Sim. & St. (Eng.) 535, 564; Re Saxon L. Assur. Soc. 2 Johns & H. (Eng.) 408, 412. This doctrine frequently has been applied to cases of the reformation of contract; *a fortiori*, it is to be applied to cases in which justice can be obtained only by a complete rescission. Canedy v. Marcy, 13 Gray (Mass.) 373; Stockbridge Iron Co. v. Hudson Iron Co. 107 Mass. 290, 299; Griswold v. Hazard, 141 U. S. 260, 11 S. Ct. 972, 999, 35 U. S. (L. Ed.) 678, and cases cited on page 284; Carrell v. McMurray, 136 Fed. 661.''

\* \* \* \* \* \* \*

''The correct doctrine both upon principle and authority was stated by the Supreme Court of Michigan in Renard v. Clink, 91 Mich. 1, 3, 51 N. W. 692, 30 Am. St. Rep. 458. 'While it is a general rule that equity will not relieve against a mistake of law, this rule is not universal. Where parties, with knowledge of the facts, and without any inequitable incidents, have made an agreement or other instrument as they intended it should be, and the writing expresses the transaction as it was understood and designed to be made, equity will not allow a defense, or grant a reformation or rescission, although one of the parties may have mistaken or misconceived its legal meaning, scope or effect. \* \* \* But where a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, or estates, and enters into some transaction, the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests, or estates, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact.' And this statement by the court is amply supported by a full and apt citation of cases.

''The approved text writers have taken the same view. Kerr (Fraud & Mistake 4th ed. 467) thus sums

up his treatment of the subject: 'When, therefore, a man, through misapprehension or mistake of the law, parts with or gives up a private right of property, or assumes obligations upon grounds upon which he would not have acted but for such misapprehension, a court of equity may grant relief if, under the general circumstances of the case, it is satisfied that the party benefited by the mistake cannot in conscience retain the benefit or advantage so acquired.' Pomeroy, in his treatise on Equity Jurisprudence, after an elaborate discussion of the question in the light of the decided cases, lays down substantially the same proposition in language which has been cited and approved in many of the decisions already referred to. 2 Pom. Eq. Jur. § 849. And see further the note to 1 Story Eq. Jur. § 111." *Reggio v. Warren*, 207 Mass. 525 (93 N. E. 805, 20 Ann. Cas. 1244, 32 L. R. A. (N. S.) 340).

The following cases recognize the principle that relief may be granted against an inequitable result which otherwise would ensue because a course of conduct has been pursued in reliance upon a mutual mistake or misapprehension of the law: *Medical Society of South Carolina v. Gilbreth*, 208 Fed. 899; *Lawrence County Bank v. Arndt*, 69 Ark. 406 (65 S. W. 1052); *Parish v. Camplin*, 139 Ind. 1 (37 N. E. 607); *Trotter v. Merchants & Farmers Bank*, 180 S. C. 449 (186 S. E. 371, 105 A. L. R. 1512); *S. S. Pierce Co. v. United States*, 17 F. Supp. 667; *Clifton Mfg. Co. v. United States*, 76 Fed. (2d) 577; *Morris v. Morris*, 247 N. Y. S. 28 (138 Misc. Rep. 682); *Ferguson v. Mounts, et al.*, 281 S. W. 616; *Quinn v. McLendon*, 152 Ark. 271 (238 S. W. 32); *Peterson v. First National Bank of Ceylon*, 162 Minn. 369 (203 N. W. 53, 42 A. L. R. 1185); *In re Smith-Flynn Commission Co.*, 292 Fed. 465; *Stedwell v. Andersen*, 21 Conn. 139; *Busiere v. Reilly*, 189 Mass. 518 (75 N. E. 958); *Macknet v. Macknet*, 29 N. J. Eq. 54; *McCarthy v. Decaix*, 2 Russ. & M. 614 (11 Eng.

Ch. 614, 39 Reprint 528); *Diebel v. Diebel*, 116 Minn. 168 (133 N. W. 463); *Forest Lake State Bank v. Ekstrand*, 112 Minn. 412 (128 N. W. 455); *Monroe Nat. Bank v. Catlin*, 82 Conn. 227, 231 (73 Atl. 3).

■ The rule thus recognized is distinguishable from the principle that a misrepresentation of the legal effect of an instrument is one upon which such reliance may not be placed by the signer of such instrument as to impeach the execution thereof as having been fraudulently induced: *Wicks v. Metcalf*, 83 Or. 687 (163 P. 434, 163 P. 988, L. R. A. 1918A, 493); *Farmers' State Bank of North Powder v. Forsstrom*, 89 Or. 97 (173 P. 935); *Associated Oil Co. v. La Branch*, 139 Or. 410 (10 P. (2d) 597); *Ball v. Associated Oil Co.*, 151 Or. 383 (50 P. (2d) 125). In the case at bar, we are not dealing with the question of fraud; but of mutual mistake which, but for the interposition of equitable relief, will result in injustice and loss to plaintiff while the relief afforded will cause no loss to plaintiff's lessor.

It is obvious that to deny to plaintiff the right to purchase the property in suit upon the agreed terms, after payment of rental aggregating the large sum shown by the record and after having expended approximately $100,000 in permanent improvement and reconstruction of the building on said property, would be to cause plaintiff serious loss and injury.

■ We concur with the learned trial judge that it would be inequitable and unjust, under the facts and circumstances of this case, to so deny plaintiff the right to acquire the ownership of said property on the agreed terms and conditions aforesaid. We adhere to the construction heretofore given to said last will and testament to the effect that said will does not confer authority upon said E. Henry Wemme Endowment Fund or

said trustees to sell real property, but because there is no other adequate means of dealing justly with the parties hereto, we affirm the decree of the circuit court wherein said E. Henry Wemme Endowment Fund, a corporation, and said trustees thereof are directed to execute to the plaintiff herein a deed to the real property in suit in accordance with the terms of the purported option above set out.

It is ordered that neither party hereto recover costs or disbursement herein.

BEAN, C. J., and BAILEY and ROSSMAN, JJ., concur.