Argued and submitted November 20, 1996, affirmed September 10, 1997

NATIVE SUN,
an Oregon limited partnership,
*Respondent,*

*v.*

L & H DEVELOPMENT, INC.,
a California corporation,
*Appellant,*

*and*

Les HILGERS,
*Appellant.*

(94-CV-0014-MS; CA A89980)

944 P2d 995

Peter A. Ozanne argued the cause for appellants. With him on the briefs were James M. Finn and Schwabe, Williamson & Wyatt.

Brian L. Gingerich argued the cause for respondent. On the brief were Martin E. Hansen and Karnopp, Petersen, Noteboom, Hubel, Hansen & Arnett.

Before Riggs, Presiding Judge, and Landau and Leeson, Judges.

LANDAU, J.

## LANDAU, J.

Defendant L & H Development, Inc. (L&H) and intervenor Les Hilgers (Hilgers) appeal a judgment entered pursuant to an arbitration award. They contend that the trial court erroneously rejected their exceptions to the award on the ground that the arbitrator decided issues not submitted to him and that his decision was, in any event, grossly erroneous. We affirm.

Plaintiff Native Sun is a limited partnership engaged in land development. L&H is a general construction contractor. Hilgers is the principal owner of L&H. He also owned a 25-percent interest in Native Sun. His initial capital contribution to the partnership totaled $168,000; he later invested an additional $75,000. L&H and Native Sun entered into a general construction contract under the terms of which L&H agreed to build an apartment complex for Native Sun for approximately $1.3 million. In an addendum to that general construction contract, L&H and Native Sun agreed that, if L&H defaulted, Native Sun was authorized to offset any damages that resulted from that default against Hilgers's limited partnership interest in Native Sun. Some time after that, Hilgers and Native Sun also negotiated a limited partnership agreement that provided that, in the event of cost overruns in the construction of the apartment complex, Native Sun would offset any damages against Hilgers's capital account.

L&H failed to complete construction of the apartment complex within the agreed price. As a result, Native Sun incurred additional construction costs totaling $329,426.55. Native Sun initiated this action alleging that it was entitled to offset Hilgers's $168,000 capital account against the cost overrun and have a judgment for the $161,426.32 difference. L&H answered and alleged by way of affirmative defense that, because Native Sun breached the general construction contract, it was precluded from offsetting Hilgers's "interest in the partnership." Meanwhile, Hilgers successfully moved to intervene and, in his complaint in intervention, alleged that Native Sun "wrongfully offset 100% of Les Hilgers'[s] partnership interest in the project"

and asked for a declaration "of his rights in the limited partnership."

All three parties entered into an agreement to submit to arbitration "all issues currently ple[ ]d" by the parties. In its memorandum to the arbitrator, Native Sun contended that any interest in the limited partnership that Hilgers retained after the exhaustion of his capital account should be applied to any losses that Native Sun suffered. Hilgers did not object that the issue was not properly before the arbitrator; he argued instead that the relevant portions of the limited partnership agreement allowed an offset against his capital account alone and that any additional damages would have to be recovered against L&H, not taken out of his remaining interest in the limited partnership. The arbitrator held that L&H had breached the general construction contract, resulting in a cost overrun of $329,426.55. The arbitrator also found that Hilgers had invested $168,000 as an initial capital contribution and an additional $75,000 after that. The arbitrator then concluded that:

> "An underlying limited partnership agreement, signed by Hilgers individually, authorized plaintiff, Native Sun, to offset against any overrun of the fixed price the initial capital contribution of the property * * * leaving a balance of overruns in the amount of $86,426.55 owing by L & H Development, Inc. to plaintiff. The application of the allowable offset eliminated any further share in the partnership by Hilgers."

Hilgers filed exceptions to the arbitrator's award with the trial court. He argued that, in deciding that the application of the allowable offset entirely eliminated his interest in the limited partnership, the arbitrator had exceeded the scope of the matters submitted. Hilgers also argued that the arbitrator's decision was "incorrect." The trial court remanded the case to the arbitrator for clarification as to whether he intended that Hilgers's entire interest in the partnership be eliminated. The parties argued the matter to the arbitrator, who concluded that

> "there was no distinction made between capital account and partnership interest throughout this. * * * There [was] no suggestion to me that once the capital account was brought to zero, that there's something going to be left over."

The arbitrator declined to modify his award. The trial court entered judgment in accordance with the arbitrator's award.

■ On appeal, L&H and Hilgers first argue that the trial court erred in failing to set aside the award, because the arbitrator exceeded the scope of his authority in concluding that offsetting the cost overruns against his capital account exhausted Hilgers's interest in the limited partnership. They contend that the arbitration agreement permitted the arbitration of those issues "currently ple[ ]d" by the parties and that the issue of whether there could be an offset against Hilgers's partnership interest—in addition to his capital account—was not identified in any pleadings at the time the arbitration agreement was executed. Native Sun argues that Hilgers's own complaint in intervention asked for a declaration as to his rights in the partnership, and that was sufficient to allow the arbitrator to consider the matters about which L&H and Hilgers object.

■■ The scope of judicial review of arbitration awards is defined by ORS 36.355. *Brewer v. Allstate Insurance Co.*, 248 Or 558, 561, 436 P2d 547 (1968).[1] ORS 36.355(1)(f) provides that an exception to an award may be taken if "[t]he arbitrators awarded upon a matter not submitted to them." Whether an arbitrator "awarded upon a matter not submitted" depends on the terms of the agreement that confer the authority to arbitrate. We review such agreements as a matter of law, *Sloan v. Journal Publishing Co.*, 213 Or 324, 366, 324 P2d 449 (1958), bearing in mind "Oregon's policy * * * to construe general arbitration agreements broadly to enhance the arbitrability of disputes." *Budget Rent-A-Car v. Todd Investment Co.*, 43 Or App 519, 524, 603 P2d 1199 (1979). As this court explained in *Snow Mountain Pine, Ltd. v. Tecton Laminates Corp.*, 126 Or App 523, 529, 869 P2d 369, *rev den* 319 Or 36 (1994):

> "Under that policy, arbitration is required, unless we can say with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute, and we resolve all doubts in favor of coverage."

---

[1] *Brewer* referred to ORS 33.320 (1967), which was renumbered to ORS 36.355.

In this case, the arbitration agreement submitted to arbitration all matters "currently ple[ ]d" by the parties. At the time of the execution of that agreement, Hilgers had pled that Native Sun wrongfully eliminated 100 percent of his partnership interest and had requested a "declaration of his rights in the limited partnership." Hilgers insists that he intended by that allegation merely to raise the issue of Native Sun's right to offset against the capital account only. The argument, however, misses the point. Under *Snow Mountain Pine, Ltd.*, the question is whether we can say "with positive assurance" that the arbitrator could not have considered the matter of Hilgers's interest in the partnership—as opposed to his interest in the capital account—as a matter that was "currently ple[ ]d" by the parties. Although Hilgers may be correct that he did not intend to raise the issue, the fact remains that the arbitrator reasonably could have considered it as having been properly raised. We conclude therefore that the matter was within the scope of arbitration.

■    L&H and Hilgers argue in the alternative that the trial court erred in failing to set aside the award, because it was grossly erroneous in two respects. First, they argue that the arbitrator ignored provisions in the limited partnership agreement limiting Native Sun's right of offset to Hilgers's capital account and erroneously relied instead on a more general provision of the earlier general construction contract allowing an offset against his partnership interest. Second, they argue that, even if it were proper to offset Native Sun's cost overruns against Hilgers's partnership interest, the evidence showed that the value of Hilgers's interest in the limited partnership exceeded the $161,428.32 that Native Sun sought to collect for its remaining damages; accordingly, they argue, the arbitrator's award "constituted plain error and was grossly erroneous." Native Sun responds that the trial court correctly declined to set aside the award, because it was not so grossly erroneous as to strike at the heart of the decision-making process.

As we have noted, our scope of review of an arbitrator's decision is defined generally by ORS 36.355. *Brewer*, 248 Or at 561. ORS 36.355 contains no provision for reviewing the substantive correctness of an arbitrator's award. It does

provide that an exception to an award may be taken if "[t]he arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final and definite award upon the subject matter submitted was not made." ORS 36.355(1)(d). A mistake of fact or law, however, does not suffice to vitiate the award. As the Supreme Court explained in *Brewer*, in which an arbitrator erroneously allocated the burden of proof:

> "[E]rrors of this kind are a part of the cost of employing the arbitration method of decision-making. The principal purpose of arbitration is to avoid litigation. If the arbitrator's award is subject to extensive judicial control, this purpose is largely frustrated. Although there is some disagreement among the courts and legal scholars on the question of the extent to which arbitration awards should be subjected to judicial control, we favor the view that confines judicial review to the strictest possible limits."

*Brewer*, 248 Or at 562 (footnote omitted). In that light, the court declared that only when the arbitrator's award is "so grossly erroneous as to strike at the heart of the decision-making process" is the award subject to judicial review. *Id.* at 563.[2]

The case law since *Brewer* has not provided a precise definition of what constitutes "gross error." Consistent with the admonition in *Brewer* to confine judicial review "to the strictest possible limits," however, the case law does demonstrate that the courts have taken a fairly broad view of what is *not* a ground for reversal under ORS 36.355. For example, in *Burlington Northern v. Union Pac.*, 267 Or 195, 515 P2d 914 (1973), it was contended that the arbitrator had erred in allocating responsibility among several railway companies to pay labor awards occasioned by route service terminations. The arbitrator allocated responsibility under the terms of a 1932 agreement between the parties. One of the companies challenged the award on the ground that a 1933 agreement, which provided for a different allocation formula, should have been applied as a matter of law. The Supreme Court, citing *Brewer*, held that, "regardless of whether this court

---

[2] Although the court stated that, in the absence of gross error, the arbitrator's decision is not *reviewable*, we understand that to mean not *reversible*. The courts perforce have authority to review the award to determine whether it was in fact grossly erroneous.

might have reached the same result in a trial de novo," the matter was not a decision that exceeded the scope of the arbitrator's powers, nor was it otherwise subject to reversal under the statute. *Burlington Northern*, 267 Or at 198.

Similarly, in *Harold Schnitzer Properties v. Tradewell Group*, 104 Or App 19, 799 P2d 180 (1990), *rev den* 311 Or 150 (1991), Tradewell challenged an arbitrator's decision to allow consequential damages, in addition to compensatory damages, in its breach of contract action with Schnitzer. According to Tradewell, the contract between the parties contained a liquidated damages clause that provided Schnitzer's exclusive remedy, and the arbitrators exceeded their authority in awarding more than the contract allowed. We rejected the argument, holding that, even if we would have reached a different decision as a matter of law, the matter was not subject to reversal under ORS 36.355. *Id.* at 23.

■     Hilgers's argument that the arbitrator erred in applying the more general provisions of the earlier general construction contract, as opposed to the more specific and later provisions of the limited partnership agreement, is precisely the argument that the court held was not reviewable in *Burlington Northern*. It may be that we would have decided the matter differently; that is beside the point. The arbitrator's alleged error of contract interpretation is not a ground for reversal under ORS 36.355. Hilgers's argument that, in any event, the arbitrator's decision "constitutes plain error" in that it awards a windfall to Native Sun in excess of the damages contemplated by the parties in their agreements is directly controlled by our decision in *Harold Schnitzer Properties*. As in that case, the parties in this case may well have contemplated the application of a contractual limitation on damages that the arbitrator failed to apply. The fact remains that such errors by an arbitrator are not a ground for reversal under the arbitration statute.

Affirmed.