Argued and submitted April 6, reversed and remanded August 30, 2006

In the Matter of the Marriage of

Cynthia J. WOODS,
*Respondent,*
*and*

Mack A. WOODS,
*Appellant.*

DR0209717; A124747

142 P3d 1072

Mark Johnson argued the cause for appellant. With him on the briefs was Johnson Renshaw & Lechman-Su PC.

Paul G. Dodds argued the cause for respondent. With him on the brief was Brownstein, Rask, Sweeney, Kerr, Grim, DeSylvia & Hay, LLP.

Before Haselton, Presiding Judge, and Brewer, Chief Judge, and Rosenblum, Judge.

HASELTON, P. J.

**HASELTON, P. J.**

Husband appeals from a general judgment of dissolution of marriage that was entered following court-annexed arbitration of the parties' dispute pertaining to the division of marital property. Husband argues, principally, that the trial court erred in denying his request for a trial *de novo* after the filing of the arbitrator's award. *See* ORS 36.425(2)(a). We agree and, particularly, conclude that husband did not by agreement waive his entitlement to obtain a trial *de novo*. Accordingly, we reverse and remand.

The facts material to our disposition of this appeal are primarily procedural. The parties were married in 2001 and, in September 2002, wife petitioned for dissolution of the marriage. The parties had no children, and neither sought spousal support. However, the parties did dispute the proper division of their property. In March 2003, the case was referred by court order to mandatory court-annexed arbitration pursuant to ORS 36.405. The parties subsequently selected Charles Gazzola as their arbitrator.

In May 2003, the parties' attorneys executed a document that was captioned "motion for an order of referral to binding arbitration" (the "stipulated motion"). The stipulated motion read as follows:

"Pursuant to the provisions of ORS 3.305, the undersigned attorneys of record in the above-entitled proceeding move that it be referred for all matters in this proceeding to Charles Gazzola, Attorney at Law, 720 SW Washington Suite 210, Portland, Oregon 97205, a member of the Arbitration/Mediation Panel, who has indicated that such referral would be accepted.

*"The parties further stipulate to binding arbitration and that the entry of a judgment arising from trial before the arbitrator as the judgment of record. Neither party waives its right to appeal the judgment or any decision to the Oregon Court of Appeals.*

"\* \* \* \* \*

"IT IS SO ORDERED that the above-entitled proceeding be referred for all matters in this proceeding to Charles Gazzola.

"DATED this _____ day of _____, 2003.

"

_____

## "CIRCUIT COURT JUDGE"

(Emphasis added.) The stipulated motion was never filed with the court or signed by any circuit court judge.[1]

Gazzola subsequently conducted the arbitration. At the beginning of the arbitration hearing, Gazzola stated, "We're here for a *binding arbitration* in the matter of the marriage of [the parties]." (Emphasis added.) Neither party took issue with the arbitrator's characterization of the arbitration as "binding." The arbitration award was filed on July 28, 2003.

Procedural misadventures—including the filing of a premature notice of appeal in this court—ensued. Ultimately, husband filed in the circuit court a timely notice of appeal from the arbitration award and request for a trial *de novo*. In response, wife filed a motion to enter the arbitration award as a general judgment, arguing that the arbitrator's award was the product of binding arbitration and that husband had waived any entitlement to a trial *de novo*. In particular, wife maintained that judgment should be entered pursuant to the Oregon Arbitration Act, *former* ORS 36.300 to 36.365, *repealed by* Or Laws 2003, ch 598, § 57.[2] As support for that contention, wife proffered the parties' stipulated motion, which wife referred to as a "stipulated agreement between the parties" to binding arbitration. Wife also submitted affidavits from the attorneys who had represented the parties before and during the arbitration, as well as from the arbitrator, all of whom stated that the parties had agreed to binding arbitration, with appeal only to the Court of Appeals.[3]

---

[1] That document is a part of the trial court record only as an exhibit attached to wife's motion to enter the arbitration award as a general judgment.

[2] Those statutes, referred collectively to as the "Oregon Arbitration Act," *see, e.g., Peace River Seed Co-Op v. Proseeds Marketing*, 204 Or App 523, 529 n 5, 132 P3d 31 (2006), were repealed in 2003, at the same time that the Oregon Uniform Arbitration Act, ORS 36.600 to 36.740, was enacted. Or Laws 2003, ch 598. The arbitration at issue in the present case occurred before the Oregon Uniform Arbitration Act went into effect.

[3] *But see Brodine v. Employment Exchange, Inc.*, 33 Or App 237, 240, 576 P2d 384 (1978) (jurisdiction in the appellate court cannot be conferred by stipulation of parties).

Husband objected to the entry of the arbitration award as a general judgment and asserted that he was entitled to trial *de novo* pursuant to ORS 36.425. The trial court ultimately agreed with wife's position and entered a general judgment predicated on the arbitration award. That judgment states, in part, that the parties had "agreed to binding arbitration, however, preserving each party's rights to appeal to the Oregon Court of Appeals."

On appeal, husband raises two assignments of error. First, he asserts, the trial court erred in denying his request for trial *de novo* pursuant to ORS 36.425(2)(a). Second, and alternatively, husband contends that this court, in exercising its *de novo* review function in domestic relations matters, should modify the arbitrator's property division. For the reasons that follow, we agree that husband is entitled to a trial *de novo* in the circuit court. That, in turn, requires remand, rendering any appellate review of the putative propriety of any property division premature.

■ In considering husband's asserted entitlement to a trial *de novo*, we begin with three statutes pertaining to mandatory court-annexed arbitration. First, ORS 36.405(1)(b) describes the matters that a court must refer to court-annexed arbitration. Among those matters are "domestic relations suit[s], as defined in ORS 107.510, in which the only contested issue is the division or other disposition of property between the parties." This is a domestic relations suit involving only division of property.

Second, ORS 36.405(2)(b) provides that the presiding judge may "[r]emove from further arbitration proceedings a civil action that has been referred to arbitration under this section, when, in the opinion of the judge, good cause exists for that exemption or removal." That did not occur in this case.[4]

Third, ORS 36.425(2)(a) permits a party to "file with the clerk [of the trial court] a written notice of appeal and request for a trial de novo of the action in the court on all issues of law and fact" within 20 days after the filing of the

---

[4] As noted, the stipulated motion was executed by the parties' counsel but was never filed or signed by a judge.

arbitrator's award. If no notice of appeal and request for trial *de novo* is filed pursuant to ORS 36.425(2)(a), then "the court shall cause to be prepared and entered a judgment based on the arbitration decision and award. A judgment entered under this subsection may not be appealed." ORS 36.425(3).

Here, husband contends, in part, that, because this case was referred by the court to the court-annexed arbitration program pursuant to those statutes and was never removed from the court-annexed arbitration program pursuant to ORS 36.405(2)(b), he was, necessarily, entitled to receive a trial *de novo* pursuant to ORS 36.425(2)(a). Wife responds, however, that, notwithstanding the lack of any judicial authorization removing this matter from court-annexed arbitration, the parties' execution of the stipulated motion (through their counsel) rendered the arbitration "binding" under the Oregon Arbitration Act, *former* ORS 36.300 to 36.365, precluding resort to trial *de novo* pursuant to ORS 36.425(2)(a).[5]

*Former* ORS 36.300 provided:

"All persons desiring to settle by arbitration any controversy or quarrel, except such as respect the terms or conditions of employment under collective contracts between employers and employees or between employers and associations of employees, may submit their differences to the award or umpirage of any person or persons mutually selected."

*Former* ORS 36.305 provided, in pertinent part, that

"an agreement in writing between persons to submit to arbitration any controversy then existing between them, shall, provided the arbitration is held within the State of Oregon, be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

---

[5] We note that ORS 3.305, the statute that the parties referred to in their "motion for an order of referral to binding arbitration," has no application to the facts of this case. ORS 3.305 permits parties in a civil action to request referral of the action to a reference judge. However, it is undisputed that the procedures set forth in ORS 3.311 concerning the referral of a case to a reference judge by the court did not occur here.

*Former* ORS 36.350(1) provided:

> "The award of the arbitrators, together with the written agreement to submit, shall be delivered to the clerk of the circuit court selected to render judgment on the award. After charging and collecting a fee of $35 therefor, the clerk shall enter the same of record in the office of the clerk. A copy of the award, signed by the arbitrators, or a majority of them, shall also be served upon or delivered to each of the parties interested in the award, and proof of such service or delivery shall be filed with the clerk. If no exceptions are filed against the same within 20 days after such service, judgment shall be entered as upon the verdict of a jury, and execution may issue thereon, and the same proceedings may be had upon the award with like effect as upon a verdict in a civil action."

The grounds for exceptions under the Oregon Arbitration Act were narrow. They generally related to fraud, misconduct, or the arbitrator having exceeded the scope of what was properly before him or her. *See generally former* ORS 36.355; *Native Sun v. L & H Development, Inc.*, 149 Or App 623, 628, 944 P2d 995 (1997), *rev den*, 327 Or 82 (1998) ("As we have noted, our scope of review of an arbitrator's decision is defined generally by ORS 36.355. * * * ORS 36.355 contains no provision for reviewing the substantive correctness of an arbitrator's award.").

Proceeding from the premise that the arbitration here was conducted pursuant to the Oregon Arbitration Act, wife contends that, because husband filed no exceptions to the arbitrator's award pursuant to *former* ORS 36.355(1), the trial court was required to enter judgment based on the arbitrator's award, without any review of the award. In all events, wife asserts, the "binding" character of the arbitration precludes any entitlement to trial *de novo* pursuant to ORS 36.425(2)(a).

Husband counters that the trial court could not properly have entered the arbitrator's award pursuant to *former* ORS 36.350 as a general judgment in this case for essentially two reasons. First, as noted above, because the court never removed the case from court-annexed arbitration as provided by ORS 36.405(2)(b), the provisions of the Oregon

Arbitration Act are inapplicable here. Second, husband asserts, an agreement to submit matters pertaining to a dissolution of marriage to binding arbitration is unenforceable under Oregon law as contrary to public policy.

■　As a starting point, we agree with husband as to the significance of the fact that the trial court never withdrew its referral of this case to court-annexed arbitration, as prescribed in ORS 36.405(2)(b). Nothing in the statutory scheme suggests that the parties, without judicial approval, can withdraw a matter from court-annexed arbitration in lieu of a qualitatively different mode of dispute resolution. We note, moreover, that, to the extent that wife now invokes provisions of the Oregon Arbitration Act, neither she nor husband sought to abate the action pursuant to *former* ORS 36.405(2)(b). Thus, husband is correct that the court placed this case into court-annexed arbitration pursuant to ORS 36.400 and never removed it from that program and that the parties did not effectively convert that arbitration into a proceeding under the Oregon Arbitration Act merely by entering into an agreement that described the arbitration as "binding." That does not, however, conclude our inquiry. The question remains: Does the parties' stipulation embodied in the stipulated motion have some other significance and effect? In particular, even if the stipulated motion did not remove this matter from court-annexed arbitration, did the stipulation constitute a mutual waiver of each party's statutory entitlement to obtain a trial *de novo* on completion of court-annexed arbitration?

Husband contends that the parties' stipulation, if so construed, would be unenforceable as violating public policy. That is so, husband asserts, because such an agreement would impermissibly bypass judicial approval of marital property divisions. *See generally* ORS 107.105(1)(f) (providing that, in judgment of marital dissolution, court "may provide" for "the division or other disposition between the parties of the real or personal property, or both, of either or both of the parties as may be just and proper in all the circumstances"); *Grossman and Grossman*, 191 Or App 294, 300, 82 P3d 1039 (2003), *aff'd*, 338 Or 99, 106 P3d 618 (2005) (citing

numerous Oregon cases for the proposition that courts in dissolution proceedings are not required to enforce parties' property settlement agreements, but will make a fair and equitable distribution of property).

We disagree. Nothing in Oregon law governing arbitration or marital property division precludes parties in dissolution proceedings from reaching an agreement by which each party forgoes his or her statutory right under ORS 36.425(2)(a) to seek trial *de novo* in the circuit court of an arbitrator's award determining the division of marital property.

We so conclude for two related reasons. First, the statutes governing court-annexed arbitration expressly authorize the enforcement of marital property divisions in circumstances in which there has been no substantive judicial (*i.e.*, circuit court judge) review of that division. In particular, as noted, under ORS 36.405(1)(b), disputes pertaining to the division of marital property are subject to court-annexed arbitration, and under ORS 36.425(3), if no timely request for trial *de novo* is filed, the circuit court "shall cause to be * * * entered" a *final and nonappealable* judgment based on the arbitration award. Thus, in every case in which the parties do not seek trial *de novo*, the arbitrator's division of marital property is enforceable, notwithstanding the lack of any substantive review and approval of that division by a judge. In short, Oregon "public policy" does not, as husband maintains, require that a judge substantively review and approve every property division.

Second, nothing in applicable law precludes the parties from agreeing to forgo judicial review of an arbitrator's marital property division, notwithstanding a statutory entitlement to obtain such review. *McInnis and McInnis*, 199 Or App 223, 110 P3d 639, *rev dismissed*, 338 Or 681 (2005), is directly analogous.

In *McInnis*, the parties entered into a marital settlement agreement that was incorporated into their dissolution judgment. That agreement provided that the spousal support provisions were nonmodifiable. 199 Or App at 225. The wife nonetheless sought modification of the spousal support, which the trial court granted. *Id.* at 227. On appeal, we

rejected the wife's argument that the nonmodification provision was not enforceable as contravening the court's authority under ORS 107.135 to modify spousal support awards. Although we agreed with the wife that the agreement could not divest the court of jurisdiction to modify the judgment, we agreed with the husband that nothing prevented the wife from waiving her right to seek modification of the judgment pursuant to ORS 107.135:

> "The waiver provision [of the settlement agreement] has nothing to do with the authority of the court; rather, it involves only whether the parties may invoke it. ORS 107.135 provides that the court has authority to modify a dissolution judgment only 'upon motion of either party.' Thus, the authority of the court to modify a dissolution judgment always has been dependent on a decision of one of the parties to invoke its authority by filing an appropriate motion. If a party who otherwise might have perfectly good grounds for a modification motion decides, for any reason, not to file one, the court is without authority to act. The parties' agreement in this case changes nothing in that regard. It involves only a decision between the parties whether they will or will not file such motions. They decided that they will not."

*McInnis*, 199 Or App at 235-36. We concluded that the waiver of the right to seek modification of a support award pursuant to ORS 107.135 did not contravene public policy. *Id.* at 236-38.

The same reasoning applies here—at least in the abstract. Although a court that refers a case to court-annexed arbitration will always have the *authority* to conduct a trial *de novo* pursuant to ORS 36.425 at a party's request, the parties to the arbitration have the ability to waive their rights to seek such a trial *de novo. See McInnis*, 199 Or App at 236 ("[A]dults with the capacity to do so generally are free to waive a panoply of rights, statutory and constitutional, so long as the waiver is knowing and intentional.").

■ The question thus reduces to whether husband's purported waiver of trial *de novo* pursuant to ORS 36.425(2) was, in fact, effective. *See id.* (statutory rights may be waived if there is " 'a clear, unequivocal, and decisive act of the party showing such a purpose' " (quoting *DK Investment Co. v.*

*Inter-Pacific Development Co.*, 195 Or App 256, 263, 97 P3d 675 (2004))). We conclude that it was not.

Here, the parties, through their attorney agents, agreed (1) to "stipulate to binding arbitration and that the entry of a judgment arising from trial before the arbitrator as the judgment of record"; and (2) to *not* waive their "right to appeal the judgment or any decision to the Oregon Court of Appeals." *See* 207 Or App at 454 (setting out text of stipulated motion). The parties dispute whether the stipulated motion was ambiguous[6] and, even if so, whether any ambiguity can be resolved by reference to extrinsic evidence in the form of affidavits of the attorneys who signed the stipulated motion, indicating that the parties intended that the only appeal of the arbitrator's award would be in the Court of Appeals.

We need not resolve that dispute because any purported waiver of trial *de novo* pursuant to ORS 36.425(2) was ineffective because the parties' stipulation was based on a material mutual mistake of law. Specifically, the parties agreed that the arbitration would be "binding," but did so based on the legally erroneous understanding that the judgment predicated on the arbitration award could be appealed to the Court of Appeals. Given that mutual mistake, husband's purported waiver was not knowing and intentional.

Here, the source of the parties' mistake of law is unclear. The parties may have erroneously believed that their agreement could confer authority on the Court of Appeals to review the award, *but see* 207 Or App at 455 n 3— or they may have erroneously believed that they had effectuated removal of the case from court-annexed arbitration and were proceeding under the Oregon Arbitration Act. Still, whatever its source, the mutual mistake itself is manifest: A judgment entered pursuant to ORS 36.425(3) based on an arbitrator's award is not appealable. *See* ORS 36.425(3) ("A judgment entered under this subsection may not be appealed.").

---

[6] One arguable source of ambiguity is the inapposite citation to the reference judge statute, ORS 3.305, in the stipulated motion. *See* 207 Or App at 457 n 5.

■ Thus, the parties' expressed intent—that the award be "binding" but appealable to the Court of Appeals—is, legally, a contradiction in terms. A mutual mistake renders a contract voidable if the mistake is so fundamental that it frustrates the purpose of the contract. *Lesher v. Strid*, 165 Or App 34, 42, 996 P2d 988 (2000).[7] Here, even assuming that the parties' stipulation expressed the implicit intent that they would forgo a trial *de novo* in the circuit court, that agreement was premised on the mutually erroneous understanding that the judgment predicated on the arbitration award could be appealed to—and would be subject to substantive review by—the Court of Appeals. Accordingly, the stipulation did not effect a waiver of husband's right to seek a trial *de novo* in the circuit court pursuant to ORS 36.425(2).

We thus conclude that the trial court erred in denying husband's request for a trial *de novo* and in entering the judgment of dissolution based on the arbitration award's division of marital property.

Reversed and remanded.

---

[7] Although the common law of equity initially drew a distinction between mutual mistakes of fact and mutual mistakes of law, holding that equity will not provide relief against a mistake at law, the Oregon Supreme Court has long since abrogated that distinction. *See N. W. Ice & Cold Storage v. Wemme*, 159 Or 415, 425, 80 P2d 881 (1938). Thus, it is of no consequence here whether we characterize the parties' mistake as one of fact or of law.