458 December 3, 2025 No. 1048

*This is a nonprecedential memorandum opinion pursuant to ORAP 10.30 and may not be cited except as provided in ORAP 10.30(1).*

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

CHRISTENSON ELECTRIC, INC.,
an Oregon corporation,
*Petitioner-Respondent,*

*v.*

McCLURE AND SONS, INC.,
*Respondent-Appellant.*

Multnomah County Circuit Court
23CV31420; A182627

Shelley D. Russell, Judge.

Argued and submitted October 28, 2025.

D. Gary Christensen argued the cause for appellant. On the briefs were Iván Resendiz Gutierrez, Kyle D. Sciuchetti, and Miller Nash LLP.

Thomas A. Larkin argued the cause and filed the brief for respondent. Also on the brief were Grant N. Margeson and Sokol, Larkin, Wagner & Storti LLC.

Before Tookey, Presiding Judge, Kamins, Judge, and Jacquot, Judge.

JACQUOT, J.

Affirmed.

**JACQUOT, J.**

This appeal arises from a construction payment dispute between a Washington general contractor, McClure and Sons, Inc. (McClure), and an Oregon subcontractor, Christenson Electric, Inc. (Christenson). McClure raises one assignment of error seeking to vacate the trial court's order confirming the arbitration award and general money judgment in favor of Christenson. McClure argues that the arbitration dispute was governed by the Federal Arbitration Act (FAA) rather than Oregon's Uniform Arbitration Act (OUAA) and that vacatur of the arbitration award was and "is necessary because the arbitrator issued an award that is completely irrational (and manifestly disregarded the law)," as the terms "completely irrational" and "manifest disregard" have been applied within the context of FAA disputes.[1] Christenson responds that the trial court correctly determined that McClure failed to meet its burden for vacatur and that the trial court's judgment should be affirmed. For the reasons provided below, we affirm.

McClure was the general contractor, and Christenson was the electrical and instrumentation

---

[1] McClure also argues that "the trial court err[ed] in ruling that state law, not federal law, governs McClure's cross-petition to vacate." McClure argues that the federal law governs pursuant to the arbitration agreement between the parties. Christenson responds that McClure did not preserve that argument and that, nonetheless, any error is harmless. The difficulty with McClure's argument is that it starts from a false premise. The record establishes that both parties asked the trial court to rely on federal case law construing section 10(a)(4) of the FAA and that the trial court analyzed McClure's request for vacatur under the standard set forth in section 10(a)(4) of the FAA. On appeal, McClure does not develop an argument that the trial court actually applied state law rather than section 10(a)(4) of the FAA, nor does McClure develop an argument as to how that would have affected the result.

A determination that the trial court analyzed McClure's cross-petition under section 10(a)(4) of the FAA is further supported because the record reflects that McClure argued and the court considered a theory of "manifest disregard of the law," even though that is not a pathway for vacatur under the OUAA. *See Floor Solutions, LLC v. Johnson*, 322 Or App 417, 422-23, 520 P3d 902 (2022) (holding that Oregon law does not incorporate a "manifest disregard of the law" standard as a basis for arbitration vacatur).

As is relevant to this appeal, because both parties agree that McClure cross-petitioned for vacatur under section 10(a)(4) of the FAA, because the trial court analyzed that provision when considering McClure's cross-petition, and because the parties argue it is appropriate to consider this appeal under section 10(a)(4) of the FAA, we likewise consider McClure's appeal under section 10(a)(4) of the FAA.

subcontractor for a construction project in Tigard, Oregon (the project). A subcontract between the parties required arbitration through the American Arbitration Association. Following a series of delays on the project, a dispute arose between the parties, and they arbitrated their dispute. The arbitrator awarded more than $800,000 to Christenson for retainage, "Change Orders and delay/extended general conditions," attorney fees, costs, and interest. The arbitrator also awarded McClure $9,000 on its counterclaim. Shortly thereafter, Christenson filed a petition under ORS 36.700 of the OUAA in Multnomah County Circuit Court, seeking to confirm the final arbitration award. McClure filed a cross-petition to vacate the final arbitration award under 9 USC section 10(a)(4) of the FAA. The trial court granted Christenson's petition, denied McClure's cross-petition, confirmed the final arbitration award, and entered a money judgment in Christenson's favor.

We review a trial court's confirmation of an arbitrator's award for legal error. *Floor Solutions, LLC v. Johnson*, 322 Or App 417, 419, 520 P3d 902 (2022). We do so under a standard highly deferential to the arbitrator's findings and conclusions. *See Native Sun v. L & H Development, Inc.*, 149 Or App 623, 629, 944 P2d 995 (1997), *rev den*, 327 Or 82 (1998) (neither mistake of fact or law vitiates an arbitration award); *Brewer v. Allstate Insurance Co.*, 248 Or 558, 562, 436 P2d 547 (1968) (review of arbitration awards are confined "to the strictest possible limits"); *see also HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F4th 1232, 1241 (9th Cir 2022) ("We must *** accept the arbitrator's findings of fact."). In resolving the arbitration question at hand, we are of course "not bound by the decisions of the Ninth Circuit—or any other federal circuit—even on questions of federal law." *Johnson v. Monsanto Co.*, 333 Or App 678, 694, 554 P3d 290, *rev den*, 373 Or 154 (2024) (internal quotation marks omitted). Nevertheless, "we consider such cases for their persuasive value." *Id.* (internal quotation marks omitted).

Section 10(a)(4) of the FAA provides, in relevant part, that an arbitration award may be vacated "where the arbitrators exceeded their powers, or so imperfectly executed them that a mutual, final, and definite award upon

the subject matter submitted was not made." It sets "a high standard for vacatur." *HayDay Farms*, 55 F4th at 1240 (internal quotation marks and citation omitted). "It is not enough to show that the arbitrator committed an error—or even a serious error."[2] *Id.* (internal brackets, quotation marks and citation omitted). Courts only have an "extremely limited review authority," regarding final arbitration awards, which "is designed to preserve due process but not to permit unnecessary public intrusion into private arbitration procedures." *Id.* (internal quotation marks and citation omitted). However, "when an arbitration award exhibits a manifest disregard of law or is completely irrational," vacatur is warranted. *Id.*

"[A]n arbitrator does not exceed its authority if the decision is a plausible interpretation of the arbitration contract." *Id.* at 1241 (internal quotation marks and citation omitted). A court "must defer to the arbitrator's decision as long as the arbitrator even arguably construed or applied the contract." *Id.* (internal quotation marks and citation omitted). A court does not consider the "rightness or wrongness of the arbitrator's contract interpretation"; if "the arbitrator's decision draws its essence from the contract," it is not "completely irrational." *Id.* (internal quotation marks and citation omitted). Similarly, proving "manifest disregard of law * * * requires something beyond and different from a mere error in the law or failure on the part of the arbitrator[] to understand and apply the law." *Id.* at 1240 (internal quotation marks and citation omitted). "To demonstrate manifest disregard, the moving party must show that the arbitrator understood and correctly stated the law, but proceeded to disregard the same." *Id.* at 1241 (internal quotation marks and citation omitted). Vacatur under section 10(a)(4) of the FAA is not permitted simply because the arbitrator "performed th[e] task [of contract interpretation] poorly." *Oxford Health Plans LLC v. Sutter*, 569 US 564, 565, 133 S Ct 2064, 186 L Ed 2d 113 (2013).

---

[2] A petitioner seeking to vacate an arbitration award pursuant to the OUAA also has a high burden. *See Seller v. Salem Womens Clinic, Inc.*, 154 Or App 522, 526, 963 P2d 56, *rev den*, 328 Or 40 (1998) (explaining that even when an arbitrator "applies the law in a manner which a court would regard as erroneous," an arbitration award will usually be upheld). "Neither a mistake of fact or law vitiates an award." *Id.* (internal quotation marks and citation omitted).

McClure argues that the trial court erred by concluding that McClure failed to meet the FAA vacatur standard. McClure argues that on a monthly basis from September 2018 through July 2021, Christensen executed written releases expressly releasing McClure from all claim rights Christensen might otherwise have had (the "monthly release waivers"). During oral argument, McClure acknowledged that the waivers expressly provided for payment of the retainage due to Christenson, thus we understand McClure's position to be that the waivers were an adequate defense to damages other than retainage awarded to Christenson. McClure argues that the arbitrator acknowledged those releases, accurately stated Oregon law governing the interpretation of contracts and arrived at a completely irrational result by choosing "not to enforce [the monthly release waiver] contracts in which Christensen expressly released its claims." Additionally, a substantial portion of McClure's appellate briefing attempts to argue for a *different* interpretation of the contractual obligations between the parties than that arrived to by the arbitrator.

In response, Christenson argues initially that McClure waived any right to challenge the final arbitration award because the contract between the parties required binding arbitration. Christenson further argues that the arbitrator requested post-hearing briefing about the monthly release waivers, the parties submitted briefing, and the arbitrator referenced McClure's argument about those waivers in the final award. Thus, Christenson argues, McClure did not meet its high burden to prove a completely irrational result or manifest disregard of the law, and the trial court did not err.

The trial court's task, like ours, was to determine "whether the arbitrator (even arguably) interpreted the parties' contract, not whether [the arbitrator] got its meaning right or wrong." *Oxford*, 569 US at 569. The arbitrator's task included resolving the order of precedence of various contract documents: a contract between McClure and the owner of the project, a "subcontract" between McClure and Christenson, the accepted bid from Christenson, as well as other change order requests, payment agreements, and

releases that arose after the start of the project and before arbitration. Careful review of the final award, the record from the trial court, and the arguments of both parties reveals that the arbitrator considered and interpreted the monthly release waivers that McClure argues were the basis of "the arbitrator exceed[ing] his power by failing to apply their unambiguous controlling terms," and the arbitrator did not arrive at a "completely irrational" decision.[3] Although we agree that the discussion by the arbitrator about the waivers could have been more fulsome, the arbitrator's decision draws its essence from the contract. *See HayDay Farms*, 55 F4th at 1241 (describing review for the "essence" of the contract). The arbitrator's final decision—which is 18 pages and includes extensive citation to evidence proffered by the parties, as well as statutory and case law authority—provides a plausible interpretation of how the many contractual provisions between the two parties operate as a whole. *See id.* (describing review of a "plausible" contract interpretation by an arbitrator). It was not the trial court's role, nor is it ours, to second-guess the arbitrator's explicit findings regarding the order of precedence of various contractual provisions, nor the arbitrator's efforts to resolve contractual ambiguities. *See Native Sun*, 149 Or App at 629, (broad deference to the arbitrator's findings and conclusions); *Brewer v. Allstate Insurance Co.*, 248 Or at 562 (review of arbitration awards is strictly confined); *see also HayDay Farms, Inc. v. FeeDx Holdings, Inc.*, 55 F4th at 1241-42 (9th Cir 2022) (a court is not to substitute an arguably better contractual interpretation in place of the arbitrator's).

---

[3] The final arbitration award may contain some errors—McClure alleges the arbitrator misquoted a portion of the contract between McClure and the project owner—nonetheless, such errors do not provide a justification for the remedy of vacatur. Section 10(a)(4) of the FAA requires confirmation "even in the face of erroneous findings of fact ***." *Kyocera Corp. v. Prudential-Bache Trade Services, Inc.*, 341 F3d 987, 997 (2003), *cert dismissed*, 540 US 1098 (2004).

Similarly, McClure's reliance on *Harder Mechanical Contract. v. Fairfield Erectors*, 278 Or 613, 564 P2d 1356 (1977), and *Development Northwest, Inc. v. Zhiryada*, 330 Or App 509, *rev den*, 372 Or 192 (2024), a nonprecedential memorandum disposition, is unhelpful. Notwithstanding that "[n]onprecedential memorandum opinions are not precedent and are not binding authority except as relevant under the law of the case doctrine" or issue and claim preclusion, ORAP 10.30(1)(c), even if the arbitrator had failed to apply or misapplied a holding from *Harder Mechanical*—a case interpreting a release provision in the context of a lien foreclosure suit—that would be insufficient for vacatur under section 10(a)(4) of the FAA.

Regarding McClure's alternative theory of vacatur, "manifest disregard of the law," it's argument is unavailing. To succeed on its cross-petition for vacatur, McClure has a burden to put forward "some evidence in the record, other than the result, that the arbitrator[ was] aware of the law and intentionally disregarded it." *HayDay Farms*, 55 F4th at 1241. Before the trial court, McClure argued "the arbitrator did not misconstrue [language that Christenson was not entitled to delay damages], rather, he completely ignored it in reaching his decision." But the final arbitration award provides "McClure argues Christenson is not entitled to any delay damages," which suggests that the arbitrator did not ignore McClure's argument concerning the disputed contractual provisions. And McClure points to nothing in the record demonstrating that the arbitrator ignored the contracts at issue in the dispute.

Instead, the final arbitration award reflects that the arbitrator applied the correct law for contract interpretation, pursuant to *Yogman v. Parrott*, 325 Or 358, 937 P2d 1019 (1997).[4] The final award also reflects that the arbitrator considered and expressly acknowledged McClure's briefing about the monthly release waivers. Page six of the final arbitration award states that "McClure also argues * * * half of the COPRs seek additional compensation for dates already released by Christenson in their *conditional waivers*." (Emphasis added). The arbitration award went on to state that "[a]ccording to McClure the cumulative nature of the foregoing reasons for non-payment renders all the COPRs defective, deficient, and preclude any obligation on the part of McClure to compensate Christenson."

In other words, the arbitrator correctly stated controlling principles of contract interpretation and applied

---

[4] In addition to the contract interpretation methodology expressed in *Yogman*, "to determine whether a contractual provision is ambiguous, the trial court can properly consider the text of the provision in the context of the agreement as a whole and in light of the *circumstances underlying the formation* of the contract." *Batzer Construction, Inc. v. Boyer*, 204 Or App 309, 317, 129 P3d 773 (2006) (emphasis added). Although the arbitrator did not expressly cite *Batzer*, the arbitrator did expressly consider the circumstances underlying the formation of the contracts. For example, section I(A) of the final arbitration award provides an overview of the project and the relationship between the parties, and section II discusses formation of the provisions regarding retainage bond.

that law in reaching a determination—about a complex relationship of contractual provisions binding the parties, *including the monthly release waivers* that McClure focused on in its cross-petition for vacatur and in this appeal. Thus, the record does not support McClure's argument about manifest disregard of the law. *See HayDay Farms*, 55 F4th at 1241 (discussing review of manifest disregard of the law). That the arbitrator interpreted the contractual provisions in a manner that McClure does not agree with is irrelevant to the trial court's role in ruling on a petition for confirmation and a cross-petition for vacatur.

Affirmed.